UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE CAMILLO, ) | |
| ) | |
| Plaintiff, ) | DOCKET NO.: 05-11721-MLW |
| ) | |
| -v- ) | |
| ) | |
| ALL PRO MOVING & STORAGE, INC., ) | |
| ) | |
| Defendant. ) | |

**VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION**

*Introduction*

Plaintiff Janice Camillo (hereinafter "Mrs. Camillo") seeks, *inter alia*, a preliminary injunction enjoining defendant *All Pro Moving & Storage, Inc.* (hereinafter "All Pro") from selling, conveying, transferring or in any way disposing of or causing damage to Mrs. Camillo's items of personal property, furniture, jewelry, clothing, musical equipment, electronics, and other personal and family items which defendant contracted to move from 31 Wellington Hill Street-#3 in Boston, Suffolk County ("the Boston property"), Massachusetts to Atlanta, Georgia ("the Atlanta property").

## *Parties*

1.  At all times material to this Complaint, plaintiff Janice Camillo (hereinafter "Mrs. Camillo") was a resident of Boston, Suffolk County, Massachusetts.

2.  Defendant All Pro Moving & Storage, Inc. ("All Pro") is a Massachusetts corporation duly-organized with a principal place of business at 47 Rockland Road, Auburn, Worcester County, Massachusetts 01501.

3.  At all times material hereto, All Pro is in the business of moving and storage of home furnishings and related items. *See* All Pro's *Verizon* advertisement attached hereto and incorporated herein as *Exhibit 1*.

## *Statement of Facts*

4.  On or about June 30, 2005, a member of the Camillo family telephoned All Pro to inquire about the cost of the move to from Boston to Atlanta and to schedule a time for an estimator to view the belongings on July 5, 2005.

5.  On or about July 5, 2005, All Pro estimator Mark Kariban came to the Boston property. The Boston property contained seven rooms and a full basement of furniture, clothing, jewelry, musical equipment, varied personal belongings as well as irreplaceable photographs and treasured items and mementoes belonging to the Camillo family. Mr. Kariban provided an estimate to ship the furnishings to the Atlanta property at 14,300 pounds for $7,249.11. A copy of the estimate is attached hereto and incorporated herein as *Exhibit 2*.

6.  On or about July 8, 2005, an All Pro moving crew headed by All Pro owner, Elijia Bowles, III, arrived at the Boston property and began loading Mrs. Camillo's property onto a moving truck. Mrs. Camillo was informed by Mr. Bowles that the estimate

for 14,300 pounds, which she had previously received from Mark, was incorrect, and that an additional fee of $2,500 or more would be required. All Pro alleged that the weight was 18,000 pounds. Consequently, a dispute arose concerning the costs of All Pro's services. All Pro personnel unloaded the truck, returned Mrs. Camillo's possessions to the Boston property and abruptly left the scene. Mrs. Camillo reported the dispute to the Massachusetts Attorney General's Office, which intervened on her behalf.

7. On or about July 9, 2005, All Pro owner, Elijah Bowles, III, contacted Mrs. Camillo and apologized for the situation and assured Mrs. Camillo that All Pro would complete the move for a flat rate of $7,200.00, which had been given to her initially by estimator Mark Kariban. Mrs. Camillo requested that All Pro set forth the agreement in written form and Mrs. Camillo apprised the Attorney General's Office that All Pro had agreed to honor the binding estimate price for the job, as referenced in ¶ 5, above.

8. On or about July 12, 2005, All Pro's crew returned to the Boston property, once again. Mrs. Camillo requested confirmation of the flat rate of $7,200.00. Instead, documents were provided that showed the sum of $9,785.01 for the moving job. By telephone, All Pro owner, Elijah Bowles, III, instructed his work crew to cross out the higher amount and replace it with the $7,200.00 flat rate price, which was performed in Mrs. Camillo's presence. A copy of the document showing the crossed out fee is attached hereto as *Exhibit 3*.

9. On or about July 12, 2005, the All Pro work crew completed packing two trucks on a single day between 11:00 a.m. and 10:30 p.m. The work crew informed Mrs. Camillo that they would return that following day. A full inventory was requested. All Pro refused to provide documents, stating that they were in the possession of the drivers who

would give Mrs. Camillo a copy the following day when they were to return to pick-up the remaining items. The partial inventory is attached hereto as *Exhibit 4.*

10. Not until 5:30 p.m. on July 13, 2005 did the All Pro work crew return to the Boston residence. Mrs. Camillo's daughter was informed by the work crew that all paper work from that previous day had been lost and that Mrs. Camillo's daughter would have to sign replacement documents before anything would be moved or transported. At that time, All Pro demanded an additional $2,500.00 to move the items. All Pro accused Mrs. Camillo of adding more furnishings to the job than had originally been designated. All Pro owner, Elijah Bowles, III, apprised plaintiff that the shipping weight was now 20,000 pounds and that the total price was increased to $9,700.00.

11. Mrs. Camillo was provided with an inventory which did not list all items in All Pro's possession. Mrs. Camillo was apprised by All Pro owner, Elijah Bowles, III, that all documentation would be provided once the trucks reached Atlanta, Georgia.

12. On or about July 14, 2005, Mrs. Camillo was informed by All Pro that the new price would be $9,400.00, including additional insurance (at a cost of $290.00), plus all taxes. Mrs. Camillo did not agree to the price and did not sign any documents to that effect.

13. On or about July 20, 2005, Mrs. Camillo arrived in Atlanta, Georgia. Several dates were scheduled for delivery and then cancelled.

14. On or about July 25, 2005, Mrs. Camillo met with two members of All Pro personnel at a weigh station in Georgia. At that time, the two All Pro workers apprised plaintiff that one truck load of her belongings had been put into storage because that truck had to be returned to Boston. They intended to unload the remaining truck and obtain the

other furnishings from storage using the same truck and deliver the property to the new home in Georgia. At no time did Mrs. Camillo provide her consent to this arrangement.

15.   On or about July 25, 2005, the remaining truck load of items was weighed. Upon arriving at the Atlanta property, Mrs. Camillo was apprised by All Pro that they would not unload the items until they were paid in advance the full amount of $9,700.00 and further that no paperwork would be provided. After being denied proof of storage of the other truck load of furnishings, Mrs. Camillo refused to pay based on the fact that the second truck load of furnishings was not at the Atlanta property; All Pro would not reveal the location of the furnishings; proper paperwork had not been provided; and an exorbitant amount was being demanded, rather than the $7,200 binding cost agreed upon by the parties.

16.   On July 25, 2005, Mrs. Camillo was informed by All Pro owner, Elijia Bowles, III, that his workers would not unload the truck until they were paid in advance the full amount of $9,700.00; once paid, they would retrieve the other items from storage, weigh them and deliver them to the Atlanta property.

17.   On July 25, 2005, All Pro stated that the furnishings would not be delivered to the Atlanta property and further that the items would be auctioned. Alternatively, All Pro demanded payment of $9,700 in exchange for keys to a storage bin. All Pro requested a meeting with Mrs. Camillo *at the side of the road* in order to make the exchange of money for the keys. Based upon defendant's erratic, unorthodox and unethical business transactions, Mrs. Camillo refused to pay the defendant.

18. Due to defendant's actions and inactions as aforesaid, Mrs. Camillo has been forced to live in her new home in Atlanta without her furnishings and personal belongings; the personal belongings valued at approximately $100,000 have been unlawfully confiscated by defendant. Mrs. Camillo has incurred substantial cost in attorney's fees and related costs in attempting to resolve this matter.

19. Plaintiff has been damaged thereby.

20. Pursuant to Mass.R.Civ.P. Rule 65(a), Mrs. Camillo states that immediate and irreparable injury, loss or damage will result to Mrs. Camillo as defendant All Pro has threatened imminently to auction her furnishings and personal belongings; additionally, Mrs. Camillo has suffered as she has lost the use of her furnishings and personal belongings.

WHEREFORE, plaintiff Janice Camillo respectfully requests that this Honorable Court issue a preliminary injunction enjoining defendant All Pro Moving & Storage, Inc. from selling, conveying, transferring or in any way disposing of or causing damage to Mrs. Camillo's items of personal property, furniture, jewelry, clothing, musical equipment, electronics, and other personal and family items which defendant contracted to move from 31 Wellington Hill Street-#3 in Boston, Suffolk County ("the Boston property"), Massachusetts to Atlanta, Georgia ("the Atlanta property"). Plaintiff furthers requests that this Court Order defendant to:

(i) reveal the location of the furnishings and allow inspection by Mrs. Camillo and/or her representatives to ensure their good condition;

(ii) deliver the furnishings to Atlanta or, alternatively, permit Mrs. Camillo to arrange alternative transport to Atlanta;

(iii) determine the *quantum meruit* value, if any, of services

performed by defendant;

    (iv)    award Mrs. Camillo damages in the form of attorney's fees and costs for the filing and prosecution of the within action; and

    (v)    for such other and further relief as this Court deems just and appropriate.

    JANICE CAMILLO, Plaintiff,
By her Attorneys,

**LAW OFFICES OF JOHN H. MOLLOY**

_/s/ John H. Molloy_

John H. Molloy    BBO #600778
Sean F. Donahue    BBO #558058
379 Salem Street
Medford, Massachusetts 02155
(781) 395-3569

## VERIFICATION

I, Janice Camillo, being duly sworn, depose and say that I have read the foregoing *Verified Complaint* and that the facts contained therein are true to my personal knowledge and belief and based upon my review of the documents related hereto, except as to matters alleged on information and belief, as to which I believe them to be true.

Signed under the penalties of perjury this 2nd day of September 2005.

*Ms. Janice Camillo*
Janice Camillo