UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE CAMILLO, | ) |
| Plaintiff, | ) DOCKET NO.: 05-11721-MLW |
| -v- | ) |
| ALL PRO MOVING & STORAGE, INC., | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION FOR
PRELIMINARY INJUNCTION AND RELATED RELIEF**

Plaintiff, Janice Camillo (hereinafter "Mrs. Camillo"), by her attorney, respectfully submits the following *Memorandum of Law* in support of her application for preliminary injunction and related relief.

Mrs. Camillo seeks, *inter alia,* a preliminary injunction enjoining defendant *All Pro Moving & Storage, Inc.* (hereinafter "All Pro") from selling, conveying, transferring or in any way disposing of or causing damage to Mrs. Camillo's items of personal property, furniture, jewelry, clothing, musical equipment, electronics, and other personal and family items which All Pro was hired to move from the Mrs. Camillo's home at 31 Wellington Hill Street-#3 in Boston, Suffolk County, Massachusetts to Atlanta, Georgia. All Pro has unilaterally confiscated Mrs. Camillo's furnishings and stored them at a location which All Pro refuses to disclose to Mrs. Camillo. She also requests that this Honorable Court issue Orders: (i) compelling defendant to reveal the location of Mrs.

Camillo's furnishings and allow inspection; and (ii) deliver the furnishings to Atlanta, Georgia, or, alternatively, to permit Mrs. Camillo to arrange alternative transport.

I.  **STATEMENT OF FACTS**:

*The following statement of facts includes some additional factual information that is not included in the Verified Complaint. The additional factual information was obtained after the Plaintiff Janice Camillo executed the verified Complaint. A supporting affidavit will be filed before hearing in this matter.*

a.  Pre-Transportation of Goods:

On or about June 30, 2005, a member of Mrs. Camillo's family telephoned All Pro after finding its' advertisement in a telephone book, and requested an estimate for the cost to move from Boston to Georgia. The advertisement read, in part, that All Pro has "Professionals moving professionals . . . courteous and quality trained personnel . . . [and] always guaranteed prices." (*See, Verified Complaint* at ¶ 1, and **Exhibit 1**).

On July 5, 2005, All Pro estimator Mark Kariban visited Mrs. Camillo's home, in Boston, to give Mrs. Camillo an estimate of her move. Mrs. Camillo gave Kariban a tour of her home and identified the property and other belongings that needed to be moved. Based on Kariban's estimate and representations, Mrs. Camillo ultimately chose All Pro to move her household belongings. *See, Verified Complaint* at ¶ 2.

At all material times relevant hereto, despite federal requirements to the contrary, neither Kariban nor any other agent or employee of All Pro provided Mrs. Camillo with:

   a. A copy of the booklet entitled, "Your Rights and Responsibilities When You Move," a document the Interstate Commerce Commission requires to be given to all shipping customers;

   b. A written description of All Pro's procedure for responding to complaints and inquiries;

   c. An accurate estimate of charges;

   d. A summary of All Pro's arbitration program;

   e. A copy of the insurance policy or other appropriate evidence of the insurance that Mrs. Camillo purchased, if any, from All Pro; and,

   f. The form of payment that All Pro would honor at delivery (this information was provided to Mrs. Camillo's daughter on July 13th after one truck had already been loaded that previous day, but never to Mrs. Camillo who was not present when the information was given to her daughter).

*See,* 49 Code of Federal Regulations Part 375 –Transportation of Household Goods In Interstate Commenrce; Consumer Protection Regulations.

Additionally, prior to transporting any goods, All Pro intentionally misquoted the charges of moving Mrs. Camillo's property. The initial estimate, albeit a non-binding estimate, was set by Kariban on July 5th in the sum of $7,249.11. *See, Verified Complaint* at ¶ 5 and **Exhibit 2**). However, All Pro subsequently increased that estimate on July 12, 2005, when its' agents or employees arrived at Mrs. Camillo's home to begin loading their truck. That increased estimate, which, arguably, was a binding estimate, was in the sum total of $9,785.01, and dated June 30, 2005. As reflected on the document, the estimate was reduced by an agent or employee of All Pro in Mrs. Camillo's presence, to an amount of $7,200.00, which, in the circumstances, is arguably a binding estimate, just before loading began on July 12th. *See, Verified Complaint* at ¶ 8.

Mrs. Camillo and her children claim that agents and employees of All Pro were deliberately belligerent and intimidating in their manner towards Mrs. Camillo. Because of this, and the Camillo family's desperate need to move from their Boston home, her daughter Shalaye signed documents on July 13th based on representations made by an agent or employee of All Pro that Mrs. Camillo, who, at that time, was not present, nor privy to Shalaye's actions, had signed similar documents that previous day, all of which had been lost or misplaced by All Pro. Copies of those documents, which were received from counsel for All Pro, shows *Mrs. Camillo's* signature on the Order of Service dated July 12th and *Shalaye's* signature on the Order of Service dated July 13th. The Order of Service dated July 12th fails to disclose any service charges or relevant shipping information, nor was it signed by anyone in behalf of All Pro. The Order of Service dated July 13th and corresponding Bill of Laden reflects services charges in the sum total of $9,451.37, and, like the previously-mentioned Order of Service, it, too, was not executed by anyone in behalf of All Pro, which failed to furnish copies of these documents to Mrs. Camillo or any of her daughters before All Pro drove off with her property.

During the initial stages of their business relationship, All Pro had informed Mrs. Camillo that the entire move could be completed with a single-trailer, yet on July 12th All Pro informed Mrs. Camillo that it would require two trailer-less trucks because of the difficulty of navigating a trailer thru her Mattapan neighborhood. Also during her negotiation with All Pro, Mrs. Camillo was told by an agent or employee of All Pro that, in the circumstances, the company's maximum limit of liability is ten thousand dollars.

b. Transportation and Arrival In Georgia:

All Pro's two loaded trucks left Mrs. Camillo's home, in Mattapan, individually, on July 12th and July 13th, respectively. Mrs. Camillo was not furnished with copies of any Order of Service or Bill of Laden before their departure. *See, Verified Complaint* at ¶¶ 9-11. On July 14th, Mrs. Camillo was informed by All Pro that the price had increased to a total amount of $9,400.00, including additional insurance at a cost of $290.00, plus all taxes. *See, Verified Complaint* at ¶¶ 12.

On or about July 20th, Mrs. Camillo arrived in Georgia in anticipation of the delivery of her household goods. Several dates were scheduled for delivery and then cancelled. *See, Verified Complaint* at ¶¶ 13. On or about July 25th, Mrs. Camillo met with two agents or employees of All Pro at a weigh station in Georgia. At that time, Mrs. Camillo was informed that one of the two loaded trucks had been placed in storage because the truck had to be returned to Boston. Mrs. Camillo was also informed that All Pro intended to unload the remaining truck and obtain her property from storage using the same truck and, subsequently, deliver the property to her new home. *See, Verified Complaint* at ¶ 14.

When the truck physically arrived at Mrs. Camillo's property in Georgia, an agent or employee of All Pro demanded payment of $9,700.00, in advance, before unloading the truck. *See, Verified Complaint* at ¶ 15. That demand was also reiterated by All Pro owner Elijia Bowles, III, who spoke to Mrs. Camillo that day. Mrs. Camillo was told that upon full-payment of $9,700.00, All Pro would unload her property and later retrieve the

5

remaining property from storage, weigh it, and make delivery. *See, Verified Complaint* at ¶ 16. Mrs. Camillo asked to inspect the property, yet her request was denied. Mrs. Camillo was not permitted to inspect the property inside the truck when it pulled up outside her home, nor was she allowed to inspect the property that was allegedly being held in storage.

According to Title 49 Code of Federal Regulations § 375.503 (d), "Upon delivery, [All Pro] . . . must provide [Mrs. Camillo] . . . with the opportunity to observe and verify that the same articles are being delivered and the condition of those articles. [All Pro] . . . must also provide [Mrs. Camillo] . . . the opportunity to note in writing any missing articles and the condition of any damaged or destroyed articles . . . ." Despite repeated requests to observe and verify that the same articles are being delivered and the condition of those articles, All Pro refused, and continues to refuse, to comply with the said regulation and further refused, and continues to refuse, to provide Mrs. Camillo with any information regarding the current location(s) of her property.

Counsel for plaintiff was recently furnished with a copy of two weigh slips from counsel for defendant, which is allegedly relevant to this case. Each slip supposedly evidences the weight of one of the loaded trucks. However, one of the slips is completely devoid of any information required under the Title 49, Code of Federal Regulations, § 375.519 including:

   1. Weigh master's signature;
   2. The date of weighing;

6

3. The identification of the weight entries as being the tare, gross or net weights;
4. The company or carrier identification of the vehicle;
5. The last name of the individual shipper as it appears on the bill of lading;
6. All Pro's shipment registration or bill of lading number.

And, the other slip contains only part of the required information. (See, **Exhibit 5**).

For the sake of argument, assuming the parties were operating under a valid non-binding estimate, a fact which Mrs. Camillo does not concede, then, in the absence of a weigh slip conforming to the requirements of the law, the weight of, at least, one of the two trucks, if not both trucks, was not accurately determined.

In summary, the evidence demonstrates that Mrs. Camillo is an "unsophisticated shipper" who was misled and exploited by All Pro who, in turn, took advantage of her inexperience and engaged in conduct violative of M.G.L. Chapter 93A.

II. **LEGAL ARGUMENTS:**
   a. **DEFENDANT HAS VIOLATED M.G.L. CH. 93A BY ENGAGING IN UNFAIR AND DECEPTIVE ACTS.**

M.G.L. Chapter 93A provides for an award of multiple damages as follows:

" . . . up to three, but not less than two, times such [actual damages] if the court finds that such use or employment of the method of competition or practice was a willful or knowing violation . . ."

A knowing state of mind for purposes of 93A exists where the defendant is practically certain that his conduct will have an unfair and deceptive result. Computer Systems Engineering, Inc. v. Qantel Corp., 571 F. Supp. 1365, 1374 (D.C. Mass, 1983). Knowledge that a representation is false is also knowledge that the representation is practically certain to cause a deceptive result. Shaw v. Rodman Ford Truck Center, Inc., 19 Mass. App. 709, 711 (1985).

The mental state necessary for establishing a willful or knowing violation of 93A with respect to nondisclosure tracks the general definitions of a willful or knowing state of mind. A knowing state of mind with respect to nondisclosure exists where the defendant is aware that through nondisclosure it is engaging in unfair and deceptive conduct or is practically certain that it will cause an unfair or deceptive result. See, Grossman v. Waltham Chemical Co., 14 Mass. App. 932, 934 (1982).

In the case at bar, the evidence clearly establishes that All Pro engaged in a wide array of unfair and deceptive trade practices including improper negotiation tactics, fraudulent contract formation, and the wrongful conversion of Mrs. Camillo's property. See, Jane Rini v. United Van Lines, Inc. 903 F. Supp. 234 (1995).

Mrs. Camillo has suffered emotional distress, which is believed to be actually and directly caused by the conduct of All Pro as it related primarily to the pre-

transportation negotiation tactics; failure to disclose claims handling procedures; and, her actual loss of goods in shipping.

There is no doubt that these acts by All Pro, whether considered singularly or cumulatively, were knowingly designed to be unfair and deceptive, pitting a big company against an individual consumer with barely the wherewithal to fight back.

### b. A PRELIMINARY INJUNCTION SHOULD BE ISSUED IN ORDER THAT DEFENDANT IS PROHIBITED FROM CONVEYING OR DISPOSING OF PLAINTIFF'S PERSONAL BELONGINGS.

Mrs. Camillo maintains that only some, not all, of her personal belongings and furnishings were transported to Atlanta, Georgia. Once there, All Pro movers refused to deliver the items to Mrs. Camillo unless Mrs. Camillo paid the sum of $9,700.00, which greatly exceeded the original estimate of $7,249.00 (*see* **Exhibit 2**) or subsequent estimate of $7,200.00 (see **Exhibit 3**). Mrs. Camillo was apprised by All Pro that only one truckload would be delivered, rather than the two trucks that were originally loaded with her furnishings. Despite several verbal requests, All Pro refused to provide Mrs. Camillo with paper work and would not reveal the location of her furnishings. Mrs. Camillo was subsequently instructed to meet the All Pro movers *at the side of the road* where she would be provided with keys to a storage bin, which allegedly contained her furnishings, in exchange of $9,700.00. See, *Verified Complaint* at ¶¶ 15-17.

9

Based upon All Pro's erratic, unorthodox and unethical business practices, Mrs. Camillo refused to pay the defendant in the absence of any information regarding the specific location of her property. All Pro has breached, and has failed to perform pursuant to, the contract between the parties. Although All Pro, through its counsel, now insists it will deliver the furnishings, it refuses to allow Mrs. Camillo access to the furnishings and household goods in order to confirm their existence or condition and it refuses to provide Mrs. Camillo with any information regarding the current location of the same.

All Pro has threatened to auction Mrs. Camillo's belongings. *See, Verified Complaint* at ¶ 20. All Pro is now claiming excessive storage fees. All Pro has employed unfair and deceptive business practices in it's' dealings with Mrs. Camillo by failing to comply with the provisions of Title 49 of the *Code of Federal Regulations* and other applicable law. Mrs. Camillo has been greatly prejudiced by All Pro's willful conduct.

Due to the unprofessional behavior exhibited by All Pro throughout this transaction, Mrs. Camillo is unable to rely upon their promises and representations. She respectfully requests that this Honorable Court order All Pro to preserve her furnishings intact without disposing of, conveying, transferring or damaging such belongings as well as to reveal their location and permit inspection and removal by an alternate transporter forthwith.

### III.    CONCLUSION.

Pursuant to Fed.R.Civ.P. Rule 65, Mrs. Camillo respectfully requests that this Honorable Court issue a preliminary injunction enjoining defendant All Pro Moving & Storage, Inc. from selling, conveying, transferring or in any way disposing of or causing damage to Mrs. Camillo's items of personal property, furniture, jewelry, clothing, musical equipment, electronics, and other personal and family items which defendant contracted to move from Boston to Atlanta. Plaintiff furthers requests that this Court Order defendant to:

    (i)    reveal the location of the furnishings and allow inspection by Mrs. Camillo and/or her representatives to ensure their good condition;

    (ii)    deliver the furnishings to Atlanta or, alternatively, permit Mrs. Camillo to arrange alternative transport to Atlanta;

    (iii)    determine the *quantum meruit* value, if any, of services performed by defendant;

    (iv)    award Mrs. Camillo damages in the form of attorney's fees and costs for the filing and prosecution of the within action; and

    (v)    for such other and further relief as this Court deems just and appropriate.

                              JANICE CAMILLO, Plaintiff,
                              By her Attorneys,

                              **LAW OFFICES OF JOHN H. MOLLOY**

                              _____
                              John H. Molloy        BBO #600778
                              Sean F. Donahue    BBO #558058
                              379 Salem Street
                              Medford, Massachusetts 02155
                              (781) 395-3569