UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JANICE CAMILLO, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 05-11721-MLW |
| ALL PRO MOVING & STORAGE, INC., ) | |
| ) | |
| *Defendant.* ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTIONS
FOR PRELIMINARY INJUNCTIVE RELIEF**

The defendant, All Pro Van Lines, Inc.[1] ("All Pro"), opposes the plaintiff's motions for preliminary injunctive relief for the reasons set forth herein.  Plaintiff's motions for preliminary injunctive relief must be denied because her remedy for shipments moving under interstate bills of lading is governed exclusively by federal law, 49 U.S.C. §§ 13702, 13706 and 13707, *et seq.* and regulations, 49 C.F.R. §375.  This federal regulatory scheme preempts and supercedes all state and common law causes of action and remedies, and does not allow for the relief presently sought by plaintiff.  In addition, plaintiff's request for injunctive relief should be denied because All Pro has a valid carrier's lien on the plaintiff's shipment; All Pro has no duty to deliver or release the shipment unless and until it has been paid at least 110% of its original estimated charges; and because the plaintiff has failed and refused to pay All Pro anything for its interstate transportation services in spite of All Pro's tender of delivery under the governing regulations.  Finally, plaintiff's request for injunctive relief should be denied also because she has utterly

---

[1] Defendant has been misnamed "All Pro Moving & Storage, Inc." in this action.

failed to show any probability of success on her claims, all as more fully described below.  In support of this Opposition, All Pro submits the affidavits of its President, Elijah Bowles, and its counsel, Wesley S. Chused.

**Background Facts.**

The current dispute between the plaintiff, Janice Camillo, and defendant All Pro concerns the amount of transportation charges due All Pro for transporting Ms. Camillo's shipment in interstate commerce from Mattapan (Boston), Massachusetts to Smyrna, Georgia pursuant to interstate orders for service and bills of lading.  Complaint, ¶¶ 4-16 and Affidavit of Elijah Bowles ("*Bowles Aff.*").

All Pro operates as an interstate motor carrier of household goods pursuant to its registration with the Federal Motor Carrier Safety Administration ("FMCSA") in accordance with the provisions of 49 U.S.C. § 13902 and the regulations promulgated by the FMCSA at 49 C.F.R. § 375.  *Bowles Aff., ¶ 2.*

On or about July 5, 2005 All Pro was called upon by Ms. Camillo to give her an estimate to transport her household goods shipment from her home in Mattapan to her new home in Smyrna, Georgia.  *Bowles Aff., ¶ 3.*  All Pro's original non-binding estimate was in the sum of $7,249.11. *Bowles Aff., ¶ 4* and Exhibit 1 thereto.  When All Pro's truck arrived at Ms. Camillo's house in Mattapan to make the pickup on July 8, All Pro saw that there were far more household goods to be loaded and moved than what she had originally shown to All Pro at the time of the estimate.  *Bowles Aff., ¶ 6.*  All Pro believes that other members of Ms. Camillo's family or friends brought additional articles to the origin point for transportation after the estimate was given, and this is confirmed by the fact that All Pro later received calls from people than Ms. Camillo looking for delivery of their household goods.  *Bowles Aff., ¶ 7.*  At that point, All Pro told Ms. Camillo that its original weight

estimate of 14,321 pounds was no longer effective, and that since her shipment was then estimated

to weigh closer to 18,000 pounds she would have to pay transportation charges based on that actual

weight.  *Bowles Aff.,* ¶ 8.

      All Pro's estimate states as follows:

> IMPORTANT NOTICE:  This estimate covers only the articles and services listed.
> It is not a guarantee that the actual charges will not exceed the amount of the
> estimate.  Common carriers are required by law to collect transportation and other
> incidental charges computed on the basis of rates shown in their lawfully published
> tariffs, regardless of prior rate quotations or estimates made by the carrier or its
> agents.  Exact charges for loading, transporting, and unloading are based on the
> weight of the goods transported, and such charges may not be determined prior to
> the time the goods are loaded in the van and weighed.  Charges for additional
> services will be added to the transportation charges.

*Bowles Aff.,* ¶ 5 and Exhibit 1 thereto.  After All Pro told Ms. Camillo that its estimate was no

longer effective due to the additional goods shipped and the higher weight, an argument ensued

between Ms. Camillo and All Pro over the weight of the shipment and All Pro's charges and, as a

result, All Pro personnel left her house and declined to do the move.  *Bowles Aff.,* ¶ 9.  The next day,

July 9, 2005, Ms. Camillo apparently changed her mind and requested All Pro to send its truck back

to make the pickup after she agreed to pay for the actual weight of the goods shipped.  *Bowles Aff.,* ¶

10.  However, before the truck arrived, Ms. Camillo called to cancel that move.  *Bowles Aff.,* ¶ 10.

All Pro then attempted to accommodate Ms. Camillo by proposing a compromise amount of

$9,451.31 for the move, and a pickup date of July 12, 2005 was finally agreed upon.  *Bowles Aff.,* ¶

11.  All Pro sent a truck to make a pickup on July 12, but since there were so much household goods

to move, All Pro needed a second truck to complete the pickup on July 13.  *Bowles Aff.,* ¶ 12.  Ms.

Camillo signed Orders for Service for both portions of the shipment on July 12 and 13, 2005

respectively, which state; "SHIPPER AGREES TO PAY ACTUAL WEIGHT."  *Bowles Aff.,* ¶¶ 13-

15.  When the two trucks were weighed, the actual weight of Ms. Camillo's shipment was calculated to be 20,480 pounds.  *Bowles Aff.*, ¶ 16.

On or about July 25, 2005, following a re-weigh of the shipment at Ms. Camillo's request, All Pro tendered delivery of the shipment.  *Bowles Aff.,* ¶¶ 20-21.  All Pro then sent one full truck (with the 12,260 pound portion) to the weigh scale where Ms. Camillo met the truck and it was weighed.  *Bowles Aff.,* ¶ 20.  Ms. Camillo took the weight ticket and All Pro's truck then followed her to her house in Smyrna, Georgia intending to make the delivery of the first portion of the shipment.  Upon arrival at Ms. Camillo's house, she told All Pro that she refused to pay anything without first inspecting her goods and further, that she refused to pay All Pro any more than the original $7,249.11 estimated charge.  *Bowles Aff.,* ¶ 21.  Moreover, Ms. Camillo said she wanted to pay All Pro with a personal check, but All Pro reminded her that it would not accept anything other than a certified or bank check, as originally agreed.  *Bowles Aff.,* ¶ 21.  All Pro told Ms. Camillo that it would deliver her shipment upon payment of $110% of the original non-binding estimate, or $7,974.02, but she again refused to pay anything, insisting that she first inspect her goods.  *Bowles Aff.,* ¶ 22.  At that point, All Pro put Ms. Camillo's shipment into storage in Atlanta, Georgia, where it remains today, subject to All Pro's carrier's lien for payment of its charges.  *Bowles Aff,.* ¶ 23.

The rules and regulations of the FMCSA on this subject provide as follows:

### § 375.217 How must I collect charges upon delivery?

* * *

  (e)  If an individual shipper pays you at least 110 percent of the approximate costs of a non-binding estimate on a collect-on-delivery shipment, you must relinquish possession of the shipment at the time of delivery.

49 C.F.R. § 375.217(e).

### § 375.407 Under what circumstances must I relinquish possession of a collect-on-delivery shipment transported under a non-binding estimate?

(a) If an individual shipper pays you at least 110 percent of the approximate costs of a non-binding estimate on a collect-on-delivery shipment you must relinquish possession of the shipment at the time of delivery. You must accept the form of payment agreed to at the time of estimate, unless the shipper agrees in writing to a change in the form of payment.

(b) Failure to relinquish possession of a shipment upon an individual shipper's offer to pay 110 percent of the estimate charges constitutes a failure to transport the shipment with "reasonable dispatch" and subjects you to cargo delay claims pursuant to part 370 of this chapter.

(c) You must defer billing for the payment of the balance of any remaining charges for a period of 30 days following the date of delivery. After this 30-day period, you may demand payment of the balance of any remaining charges, as explained in §375.405.

49 C.F.R. § 375.407. *Bowles Aff.,* ¶ 24.

**<u>Argument.</u>**

Not only has the plaintiff not shown any right to equitable relief, but in fact All Pro has shown that it has a valid carrier's lien on Ms. Camillo's shipment to satisfy its transportation charges due, and that it is not obliged to deliver the shipment or to permit any so-called "inspection" of the shipment unless and until the plaintiff pays All Pro 110% of the original non-binding estimate, or $7,974.02. There is no law that supports the plaintiff's demands for relief. The dispute in this case is not subject to any state or common law principles or remedies, but is governed exclusively by federal law to wit, the ICC Termination Act of 1995 ("ICCTA"), 49 U.S.C. §§ 13702, 13706 and 13707. As required by 49 U.S.C. § 13702, All Pro maintained in effect a tariff specifying its rates and charges and the FMCSA's rules and regulations. *Bowles Aff.,* ¶ 24.

The dispute here is nothing new. It has long been held, under the filed rate doctrine, that a shipper must pay, and a carrier must collect the rates and charges based on its tariff. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126 (1990). Interstate motor carriers of household goods may not waive or be estopped from collecting their full tariff charges. *Id.* It is not uncommon for household goods shippers and carriers to argue over the amount of charges

due when the actual shipment weight turns out to be higher than the estimated weight. That is

why the FMCSA promulgated the 110% rule in the first place. Many cases have upheld the

motor carrier's right to collect 110% of the estimated amount on delivery prior to delivering the

shipment, with the shipper remaining liable for the balance due; and the governing law also holds

that state consumer protection and common law (fraud) claims are preempted. *See, e.g., United

Van Lines, Inc. v. Homburger*, 932 F. Supp. 139 (D. N.C. 1996); *Rini v. United Van Lines, Inc.*,

104 F. 3d 502 (1st Cir. 1997), *cert. denied* 522 U.S. 809, 118 S. Ct. 51 (1997). A shipper of

household goods, such as Ms. Camillo, is chargeable with knowledge of a carrier's tariff

provisions as a matter of law, even if they exceed the carrier's original estimate. *Id; see also,

United Van Lines, LLC  v. Rapp*, 2004 U.S. Dist. LEXIS 4751 (N.D. Ill. 2004). **Appendix A**

hereto.

      Many other cases have upheld federal preemption of state and common law claims for relief

where claims are based on loss or damage to household goods shipments such as Ms. Camillo's

moving under interstate bills of lading. Shipper claims against carriers that arise from interstate bills

of lading are strictly and exclusively governed by the ICCTA. 49 U.S.C. §14706; *see also, Rini,

supra; Richter v. North American Van Lines*, 110 F. Supp. 2d 406, 410-411 (D. Md. 2000) ("There

is no question that the Carmack Amendment has been held to preempt a very broad range of state

common law claims relating to the interstate shipment of goods under a valid bill of lading"); *White

v. United Van Lines, Inc.*, 758 F. Supp. 1240, 1242 (N.D. Ill. 1991) ("[i]t is well established that a

shipper is chargeable with knowledge of a carrier's tariff provisions.").

      For all of the above reasons, All Pro has every right to refuse delivery of Ms. Camillo's

shipment unless and until she pays All Pro 110% of its estimated charges, following which she

remains liable for the balance of any balance charges due. There is no statute, regulation or other

provision of law that gives a shipper the right to inspect her shipment prior to payment and delivery. The statute and the regulations clearly spell out the respective rights, duties and liabilities of both shipper and carrier on this point. All Pro has a lien on Ms. Camillo's shipment to satisfy its interstate freight charges. Therefore, any claim or prayer for injunctive relief must be denied.[2]

In addition to the above, All Pro, through its counsel, by letter dated August 16, 2005, attempted to resolve the present impasse by proposing a solution to get Ms. Camillo's shipment delivered to her upon compliance with the 110 % rule. *See* Affidavit of Wesley S. Chused ("*Chused Aff.*"), and Exhibit A thereto. All Pro proposed that it would deliver Ms. Camillo's shipment if she would forward a certified or bank check in the sum of $7,974.02, under the 110% rule, payable to "All Pro Van Lines, Inc." to be held in escrow by Mr. Chused, All Pro's counsel, pending delivery of the shipment to Ms. Camillo. *Chused Aff.,* ¶¶ 3-4 and Exhibit A thereto. Nonetheless the plaintiff rejected that proposal, insisting instead that she first inspect the shipment. *Chused Aff.,* ¶ 5. Given the fact that she first refused to tender any payment to All Pro, then proposed payment by an uncertified check and has now again refused to make or offer payment by certified or bank check for the 110 % figure, it is obvious that Ms. Camillo is attempting to obtain delivery of her shipment without paying for it.

It is basic that a party seeking preliminary injunctive relief must demonstrate a probability of success on the merits. Ms. Camillo has utterly failed to make that showing, and her requests for preliminary injunctive relief therefore must be denied.

> ALL PRO MOVING & STORAGE, INC.
> By its attorney,

---

[2] Even Massachusetts state law holds that a moving company's lien extends to moving and packing services. *Kennedy v. Gleason Brothers, Inc.* 14 Mass. App. Ct. 367(1982).

September 20, 2005                          /S/Wesley S. Chused
                                            Wesley S. Chused (BBO #083520)
                                            LOONEY & GROSSMAN LLP
                                            101 Arch Street
                                            Boston, MA  02110
                                            (617) 951-2800


## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2005 I served a copy of the foregoing pleading upon all parties hereto by hand, electronically, facsimile or by mailing copies thereof via first-class mail, postage prepaid, properly addressed to:

John H. Molloy, Esq.
Sean F. Donahue, Esq.
379 Salem Street
Medford, Massachusetts 02155


                                            /S/Wesley S. Chused
                                            Wesley S. Chused