UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANICE CAMILLO, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION |
| ALL PRO MOVING & STORAGE, INC., | ) | NO. 05-11721-MLW |
| | ) | |
| *Defendant.* | ) | |

**AFFIDAVIT OF WESLEY S. CHUSED ON BEHALF OF
DEFENDANT IN OPPOSITION TO
PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF**

Commonwealth of Massachusetts }
County of Suffolk                          }   ss.

Wesley S. Chused, upon oath, deposes and states as follows:

1.      My name is Wesley Chused and I am a member of the law firm of Looney &

Grossman LLP, 101 Arch Street, 9th Floor, Boston, MA 02110.

2.      I am counsel of record for the defendant in this lawsuit, All Pro Van Lines, Inc.[1]

("All Pro").

3.      This affidavit is submitted on behalf of All Pro in opposition to the plaintiff's

motions for preliminary injunctive relief seeking orders that All Pro permit her to inspect her

---

[1] Defendant has been misnamed "All Pro Moving & Storage, Inc." in this action.

interstate shipment of household goods and that All Pro be ordered to deliver it without being paid. The statements made in this affidavit are true of my own personal knowledge.

4.    On August 16, 2005 called the plaintiff's lawyers, John H. Malloy, Esq. and Sean F. Donahue, Esq., to discuss the issues involved in this case, hoping to work something out to avoid the expense of a hearing on the preliminary injunction.  I spoke with Ms. Mal Jones, their paralegal, who told me they were both on vacation that week.

5.    I then faxed a letter, **Exhibit A** hereto, to Attorneys Malloy and Donahue, in which I summarized my client's position and furnished factual (as provided by All Pro) and legal support for All Pro's refusal to deliver Ms. Camillo's shipment without first being paid 110% of All Pro's original estimate, with the balance to be billed by All Pro to Ms. Camillo after delivery.

6.    Although the dates in my letter are slightly inaccurate (original estimate date and the dates surrounding All Pro's pickup of Ms. Camillo's shipment were off by about a week), the substance of the letter is the same: I extended to Attorneys Malloy and Donahue, in the hope of avoiding the expense of a hearing on the plaintiff's prayers for preliminary injunctive relief, All Pro's offer to deliver Ms. Camillo's shipment upon payment of the sum of $7,974.02 under the Federal Motor Carrier Safety Administration's "110% rule."

7.    I followed up my August 16, 2005 letter with a telephone call to Attorney Malloy's and Donahue's law office on August 17 and spoke again with Ms. Jones, who told me she would call me back after speaking with Attorneys Malloy and Donahue and their client to respond to the proposal in my letter.  After I did not hear back from Ms. Jones, I called her on August 18, 2005 at approximately 12:30 p.m., and she then told me that Ms. Camillo rejected the proposal in my August 16, 2005 letter and insisted that she would not pay All Pro anything unless and until she first inspected the shipment.

8.      On September 6, 2005, I received a faxed letter, **Exhibit B** hereto, from Mr. Donahue, in which he essentially repeated the same demands on his client's behalf as set forth in the Verified Complaint, with a few assertions irrelevant to the immediate dispute, in his attempt to obtain inspection and delivery of Ms. Camillo's shipment without her paying anything to All Pro.

9.      Attached hereto as **Exhibit C** is a copy of my letter of September 7, 2005 in response to Mr. Donahue, in which I again proposed terms, consistent with the FMCSA's regulations, upon which All Pro would deliver Ms. Camillo's shipment so as to avoid further litigation on this point and further to stop the accrual of storage charges.

10.     As of this date, I have not heard anything further from Ms. Camillo's lawyers in this lawsuit, nor have I received any pleadings on Ms. Camillo's behalf or her answer to All Pro's Counterclaim in this case.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 13, 2005.

/S/ Wesley S. Chused
Wesley S. Chused

**EXHIBIT A**

# Looney & Grossman LLP
### Attorneys at Law

Wesley S. Chused
Voicemail: Ext 551
Email: wchused@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone (617) 951-2800
Telecopier (617) 951-2819
www.lgllp.com

August 16, 2005

**VIA FACSIMILE, (781) 395-4165, AND MAIL**

John H. Malloy, Esq.
Sean F. Donahue, Esq.
379 Salem Street
Medford, MA 02155

Re:    **Janice Camillo v. All Pro Van Lines, Inc.**
       **Our File No. 12771.014**

Dear Messrs. Molloy and Donahue:

As you are aware, I represent All Pro Van Lines, Inc. ("All Pro") with respect to the household goods shipment of your client, Janice Camillo. This is All Pro's informal response to the summons, complaint and temporary restraining order that were served on All Pro on August 13, 2005 in the above matter, as well as its proposal for an interim solution to the immediate dispute between Ms. Camillo and All Pro over the freight charges due on her shipment and the circumstances under which All Pro will deliver it. For the reasons described below, it is All Pro's position that it has a lawful carrier's lien on Ms. Camillo's shipment, and that All Pro has no legal obligation to deliver it until its transportation charges have been paid, as described below. Pursuant to your request, copies of the pertinent shipping documents were faxed to you earlier this afternoon. It is my client's hope that with these documents and the explanation below, Ms. Camillo's shipment can be delivered and there will be no need for a hearing on the preliminary injunction on August 22.

**Ms. Camillo's shipment.**

I am informed of the following:

Ms. Camillo's shipment, from Mattapan, Massachusetts to Smyrna, Georgia is an interstate shipment and is governed exclusively by federal law, to wit, the ICC Termination Act of 1995, 49 U.S.C. §13101, *et seq.* ("ICCTA"). The ICCTA, and the rules and regulations promulgated by the Federal Motor Carrier Safety Administration ("FMCSA") thereunder govern exclusively all matters concerning Ms. Camillo's shipment, including, in particular, the freight

## Looney & Grossman LLP

John H. Malloy, Esq.
Sean F. Donahue, Esq.
Page 2
August 16, 2005

charges due All Pro for transporting her shipment and the conditions precedent to delivery. The ICCTA preempts all state and common law remedies.

Ms. Camillo's obligation to pay All Pro and All Pro's right to collect its transportation charges in full from Ms. Camillo are determined by the Orders for Service signed by Ms. Camillo, the Bills of Lading issued by All Pro for her shipment. Copies of the two Orders for Service, Bills of Lading and Household Goods Descriptive Inventory for Ms. Camillo's shipment were already faxed to you. I now also enclose a copy of All Pro's original non-binding estimate in the sum of $7,249.11 to Ms. Camillo, reflecting that it was calculated on the basis of approximately 14,500 pounds of freight, which is what Ms. Camillo originally represented to All Pro's representative.

After All Pro gave Ms. Camillo the original estimate, All Pro representatives appeared at Ms. Camillo's house in Mattapan on July 1, 2005 to make the pickup. It was then that All Pro saw that there were far more household goods to be loaded and transported than what she had originally shown to All Pro's representative at the time of the estimate. All Pro believes that other members of Ms. Camillo's family or friends brought additional articles to the origin point for transportation, and this is confirmed by the fact that All Pro later received calls from people other than Janice Camillo looking for delivery of their household goods.

All Pro then (on July 1, 2005) told Ms. Camillo that the original weight estimate of 14,500 pounds was no longer effective, that her shipment was then estimated to weigh closer to 18,000 pounds and that she would have to pay transportation charges based on that weight. An argument then ensued between Ms. Camillo and All Pro over the actual weight of the shipment, as a result of which All Pro's personnel left her house and declined to do the move. Then, at Ms. Camillo's request, All Pro sent its truck back on July 2, 2005 to make the pickup, after Ms. Camillo agreed to pay for the actual weight. However, before the truck arrived, Ms. Camillo called to cancel that move. After All Pro had its estimator do another estimate and attempted to accommodate Ms. Camillo by proposing a compromise amount of $9,451.31 for the move, a pickup date of July 12, 2005 was finally agreed upon. All Pro sent a truck to make the pickup on July 12, but since there were so much household goods to move, All Pro needed a second truck to complete the pickup on July 13. When the two trucks were weighed, the actual weight of Ms. Camillo's shipment was calculated to be 20,480 pounds. *See, infra.*

The loaded weight of the first truck was 28,360 pounds. Subtracting the empty weight (16,100 pounds) of the truck, a 2004 Freightliner Model M2 Straight Truck, diesel powered, resulted in a net weight of the first portion of her shipment of **12,260 pounds.** The loaded weight of the second (identical) truck was 24,220 pounds, which resulted in a net weight of the second portion of her shipment of **8,220 pounds.** As a result, the total weight of her shipment

Looney & Grossman LLP
John H. Malloy, Esq.
Sean F. Donahue, Esq.
Page 3
August 16, 2005

was **20,480 pounds.** Copies of both "loaded" weight slips were also faxed to you earlier today. Although the weight slip for the second truck (Providence & Worcester Railroad Co. "weigh slip") is barely legible on the enclosed copy, I am informed that it shows a loaded weight of 24,220 pounds, and I have no reason to doubt that figure.

While in route to Georgia, one of the trucks broke down and had to be brought back to Massachusetts for repairs. The other truck continued to Georgia and the shipment placed in storage to await the arrival of the second (repaired) truck. During that time another dispute erupted between our clients when Ms. Camillo told All Pro that she would not pay anything, so All Pro put the second portion of the shipment into storage with the first, where the entire shipment remains today, until All Pro is paid, as described below.

**Transportation Charges due All Pro.**

All Pro has not only the right but also the duty to collect its full tariff charges from Ms. Camillo under the Bills of Lading, All Pro's tariff and governing principles of transportation law. All Pro has a lien on the shipment pursuant to its Bill of Lading (and even at common law) for the transportation charges due on the shipment. It has no legal obligation, nor does Ms. Camillo have any legal right, to inspect the shipment prior to delivery or to demand delivery of the shipment on any condition other than by paying the freight charges due under the ICCTA and the FMCSA's regulations.

All Pro's original estimate to Ms. Camillo of $7,249.11 was based on an estimated weight of 14,500 pounds. However, the actual weight of her shipment turned out to be 20,480 pounds. In situations such as this, where the actual charges due the carrier exceed the charges on the original non-binding estimate, the carrier is obliged to deliver the shipment upon the shipper's payment of "at least 110% of the approximate costs of a non-binding estimate" ($7,249.11) prior to delivery, or in this case, $7,974.02, with the balance of charges due being billed by the carrier to the shipper after delivery. *See* 49 C.F.R. §375.217(e). This is commonly known as the "110% rule." Ms. Camillo, however, has not offered to pay even that ($7,974.02) amount.

Although a shipper may obtain delivery of her shipment upon payment of 110% of the originally estimated charges, she remains liable nonetheless to the motor carrier for the difference between what she pays and the actual tariff charges due the carrier. In the case of Ms. Camillo's shipment, there will be additional charges of $2,858.72 (the difference between $7,974.02 and the actual charges due on the 20,480 pound shipment, $10,832.74), plus storage and redelivery charges in accordance with All Pro's tariff. In any event, although All Pro offered

# Looney & Grossman LLP

John H. Malloy, Esq.
Sean F. Donahue, Esq.
Page 4
August 16, 2005

to deliver the shipment to Ms. Camillo in Georgia upon payment of 110% of the estimated charges ($7,974.02), she declined to pay anything, and the storage charges continue to accrue.

Based on these facts and the FMCSA's regulations at 49 C.F.R. §375.217(e), Ms. Camillo owes All Pro $7,974.02 (110% of the original estimate) *prior to* delivery. All Pro is willing to deliver the shipment upon payment of that amount.

## The Filed Rate Doctrine.

The legal basis for Ms. Camillo's obligation to pay All Pro the full amount of its tariff charges lies in the terms and provisions of the ICCTA, 49 U.S.C. §§ 13702, 13706, 13707, and the filed rate doctrine. It has long been held, under the filed rate doctrine, that a shipper must pay, and the carrier must collect, the rates and charges specified by its tariff. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 126 (1990). Interstate motor carriers of household goods may not waive or be estopped from collecting their full tariff charges. Many cases have upheld the motor carrier's right to collect 110% of the estimated amount on delivery prior to delivering the shipment, with the shipper remaining liable for the balance due; and the governing law also holds that state consumer protection and common law (fraud) claims are preempted. *See, e.g., United Van Lines, Inc. v. Homburger*, 932 F. Supp. 139 (D. N.C. 1996); *Rini v. United Van Lines, Inc.*, 104 F. 3d 502 (1st Cir. 1997), *cert. denied* 522 U.S. 809, 118 S. Ct. 51 (1997). Many other cases support this principle. A shipper of household goods, such as Ms. Camillo, is chargeable with the knowledge of a carrier's tariff provisions as a matter of law, even if they exceed the carrier's original estimate. *Id; see also, United Van Lines, LLC v. Rapp*, 2004 U.S. Dist. LEXIS 4751 (N.D. Ill. 2004).

I also call to your attention the fact that any state or common law claims or remedies you or Ms. Camillo may be contemplating against All Pro are preempted as a matter of federal law.

For all of the above reasons, All Pro will not deliver Ms. Camillo's shipment until it has been paid at least $7,974.02.

## Proposal to Resolve the Immediate Dispute.

In the interests of resolving the immediate dispute between our clients, getting Ms. Camillo's shipment delivered to her without further delay, and to avoid the expense of appearing in court to argue the preliminary injunction next Monday, I concur with your idea that Ms. Camillo could send me a certified or bank check in the sum of $7,974.02 payable to "All Pro Van Lines, Inc." which I will hold in escrow until the shipment is delivered to Ms. Camillo. As soon as I receive the check I will order All Pro to make the delivery. When All Pro advises me

Looney & Grossman LLP
John H. Malloy, Esq.
Sean F. Donahue, Esq.
Page 5
August 16, 2005

that the shipment has been delivered, I will confirm that with you and then release the check to All Pro. If this proposal is agreeable to you and your client, All Pro will agree to take no action to enforce its carrier's lien on the shipment, and the August 22 hearing on the preliminary injunction will become moot.

If, after delivery, Ms. Camillo should have a loss or damage claim, she may file it in writing with All Pro in accordance with the terms of the bill of lading (*see* SECTION 6), and All Pro will process it in accordance with the FMCSA's regulations.

I hope this will lead to a quick resolution of this dispute so that unnecessary litigation expenses can be avoided. Please call me as soon as possible to discuss this proposed solution. I look forward to hearing from you.

Very truly yours,

Wesley S. Chused

WSC/dml
Enclosures
cc:     All Pro Van Lines, Inc.

L:\12771\014\Ltr\002 (Davis).doc

08/16/2005 03:48 FAX 5087219101          ALL PRO MOVING & STORAGE                    ☑001/004

MILBIN PRINTING INC., 1292 MOTOR PARKWAY, HAUPPAUGE, NY 11749 (631) 526-8900

# ESTIMATED COST OF SERVICES

## ALL PRO MOVING & STORAGE
### AGENT FOR ALL PRO VAN LINES
100 LAMARTINE STREET
WORCESTER, MA 01608
(508) 890-1180

MC 323997

DATE: 7/5/05

Name of shipper: Janice Camillo          Phone No.

Address of shipper: 31 Wellington Hill St          Zip code

Shipment moving from: Mattapan (boston) MA          To: Smyrna GA

Shipper's destination contact:          Phone No.

Packing Date Requested: 7/7/05     Loading Date / Delivery Date or period of time requested:

IMPORTANT NOTICE: This estimate covers only the articles and services listed. It is not a guarantee that the actual charges will not exceed the amount of the estimate. Common carriers are required by law to collect transportation and other incidental charges computed on the basis of rates shown in their lawfully published tariffs, regardless of prior rate quotations or estimates made by the carrier or its agents. Exact charges for loading, transporting, and unloading are based upon the weight of the goods transported, and such charges may not be determined prior to the time the goods are loaded on the van and weighed. Charges for additional services will be added to the transportation charges.

| RULE | SEC. | ITEM | SERVICES | TO ZIP | CHARGES | | |
|---|---|---|---|---|---|---|---|
| | | | Transportation FROM ZIP | | 6254.25 | | TOTAL ESTIMATED COST $ 7249. |
| | | | Origin/Destination Fee | | 328.90 | | |
| | | | Fuel Surcharge (when applicable) | | 344.21 | | |
| | | | Insurance Surcharge (when applicable) | | | | If the total tariff charges for th listed articles and services e ceed this estimate by more th ten percent, then, upon yo request, the carrier must reli quish possession of your ship ment upon delivery in advan of the payment of the tot amount of tariff charges show on the bill of lading or freig bill. You are still obligated to p the balance of the total charg within 15 days. |
| | | | Valuation | | | | |
| | | | Containers, Packing & Unpacking | | | | |
| | | | Storage-In-Transit at ZIP Location | | | | |
| | | | Date In            Date Out | | | | |
| | | | SIT Pickup and Delivery | | | | |
| | | | Extra Pickups or Deliveries No.        at ZIP(s) | | | | |
| | | | Extra Labor, Special Services or Waiting Time     Stairs | | 321.75 | | Maximum amount to be paid delivery of your C.O.D. shi ment in cash, certified check money order is (total estimat cost plus 10 percent): |
| | | | Bulky Articles | | | | |
| | | | Additional Weight Additives | | | | |
| | | | Advanced Charges | | | | |
| | | | Shuttle Service | | | | |
| | | | Self-Storage/Mini-Warehouse Pickups or Deliveries | | | | |
| | | | Overtime Pickups or Deliveries | | | | |
| | | | Other Additional Services | | | $ 7249. | |

| FULL SERVICE | CONTAINERS & PACKING | $ | UNPACKING | $ |
|---|---|---|---|---|

| CUSTOM SERVICE | | CONTAINERS & PACKING | UNPACKING |
|---|---|---|---|
| CARTON DESCRIPTION | | QUANTITY | QUANTITY |
| DISH PACKS | | | 1998 |
| CARTONS | Less Than 3 cft. | | |
| CARTONS | 3 cft. | | 626 Maids |
| CARTONS | 4.5 | | |
| CARTONS | 6 | | Cgr |
| CARTONS | 6.5 | | |
| WARDROBE CTN. | | | 700.00 |
| CRIB MATTRESS CTN. | | | |
| MATTRESS CTN., TWIN/TWIN LONG | | | |
| MATTRESS CTN., DOUBLE (NOT EXCEEDING 54" X 75") | | | |
| MATTRESS CTN., KING/QU. (EXCEEDING 54" X 75") | | | |
| HEAVY DUTY | | | |
| OTHER | | | |
| OTHER | | | |
| | | TOTAL CONTAINERS & PACKING | $ | TOTAL UNPACKING | $ |

Remarks: 8-10 Am

NOTICE: Articles not to be shipped should be indicated by a check mark in the column provided on the table of measurements. If the prospective individual shipper has not previously been furnished with the p... pation OCE-100, Your Rights and Responsibilities When You Move, a written description of the carrier's customer dispute handling procedures, a concise accurate summary of any dispute settlement procedures ... shipments in individual shipper on the household... required by the Surf...

08/16/2005 03:49 FAX 5087219101    ALL PRO MOVING & STORAGE    002/004

MILBIN PRINTING INC. 1200 MOTOR PARKWAY, HAUPPAUGE, NY 11749 (631) 582-8800

# TABLE OF MEASUREMENTS

| ARTICLE | Cu. Ft. | | | | | ARTICLE | | | | | ARTICLE | Cu. Ft. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **LIVING ROOM** | | | | | | Crib, Baby | | | | | Carriage, Baby | 20 | |
| Bar, Portable | 10 | | | | | Chest | 12 | | | | | Chairs, Folding | 1 | |
| Bench, Fireside or Piano | 5 | | | | | Chest, Toy | 4 | | | | | Clothes, Hamper | 1 | |
| Bookcase | 20 | | | | | Crib, Baby | 5 | | | | | Cot, Folding | 10 | |
| Bookshelves, Sectional | 5 | | | | | Table, Child | 5 | | | | | Desk, Office | 30 | |
| Chair, Arm | 10 | | | | | Playpen | 10 | | | | | Fan | 5 | |
| Chair, Occasional | 5 | | | | | Rug, Large or Pad | 10 | | | | | Fernery or Plant Stands | 10 | |
| Chair, Overstuffed | 25 | | | | | Rug, Small or Pad | 3 | | | | | Foot Lockers | 5 | |
| Chair, Rocker | 12 | | | | | | | | | | | Garbage Cans | 7 | |
| Chair, Straight | 5 | | | | | **KITCHEN** | | | | | | Golf Bag | 2 | |
| Clock, Grandfather | 20 | | | | | Breakfast Suite Chairs | | | | | | Heater, Gas or Electric | 2 | |
| Day Bed | 30 | | | | | Breakfast Table | 10 | | | | | Metal Shelves | 5 | |
| Desk, Small or Winthrop | 22 | | | | | Chair, High | 5 | | | | | Seasonal Decorator | 4 | |
| Desk, Secretary | 35 | | | | | Ironing Board | 2 | | | | | Mirror | 4 | |
| Fireplace Equipment | 5 | | | | | Kitchen Cabinet | 30 | | | | | Printer | 3 | |
| Foot Stool | 2 | | | | | Rocker | 5 | | | | | Ping Pong Table | 20 | |
| Lamp, Floor or Pole | 3 | | | | | Microwave Oven | 10 | | | | | Pool Table | 40 | |
| Magazine Rack | 1 | | | | | Serving Cart | 15 | | | | | Power Tools | 20 | |
| Music Cabinet | 10 | | | | | Stool | 2 | | | | | Sled | 5 | |
| Piano, Baby, Gr. or Upr. | 70 | | | | | Table | 10 | | | | | Rug, Large or Pad | 10 | |
| Piano, Parlor Grand | 80 | | | | | Utility Cabinet | 10 | | | | | Rug, Small or Pad | 3 | |
| Piano, Spinet | 60 | | | | | Vegetable Bin | 5 | | | | | Toboggan | 5 | |
| Radio, Table | 2 | | | | | | | | | | | Suitcase | 5 | |
| Record Player, Port. | 5 | | | | | **APPLIANCES** | | | | | | Table, Utility | 5 | |
| Rugs, Large Roll or Pad | 10 | | | | | Air Conditioner, Window | 10 | | | | | Trickle Box | 1 | |
| Rugs, Small Roll or Pad | 3 | | | | | Dehumidifier | 10 | | | | | Tool Box | 10 | |
| Sofa, 2' Cushions | 35 | | | | | Dishwasher | 10 | | | | | Tricycle | 5 | |
| Sofa, 3 Cushions | 50 | | | | | Disposal | 20 | | | | | Wagon, Child's | 5 | |
| Sofa, 4 Cushions | 60 | | | | | Dryer, Electric or Gas | 25 | | | | | | 2 | |
| Sofa, Sectional per Sect. | 30 | | | | | Freezer (Cu. Capacity) | | | | | | Work Bench | 80 | |
| Stereo Component | 5 | | | | | 10 or Less | 30 | | | | | | | |
| Stereo | 25 | | | | | 11 to 15 | 45 | | | | | | | |
| Stool, Couch or Hideabed | 50 | | | | | 16 and over | 60 | | | | | | | |
| Tables, Drop/Pieces | 15 | | | | | Range or Stove | 12 | | | | | | | |
| Tables, Coffee, End or Nest | 5 | | | | | Range, Electric or Gas | 3 | | | | | | | |
| Telephone Stand & Chair | 5 | | | | | Refrigerator (Cu. Capacity) | | | | | | | | |
| Television, Bigscreen | 40 | | | | | 6 cu.ft. or less | 30 | | | | | | | |
| Television, Combination | 20 | | | | | 7 to 10 cu.ft. | 45 | | | | | | | |
| TV or Radio Console | 10 | | | | | 11 cu.ft. and over | 60 | | | | | | | |
| Television Table Model | 5 | | | | | Vacuum Cleaner | 5 | | | | | | | |
| **DINING ROOM** | | | | | | Washing Machine | 25 | | | | | **PACKING** | | |
| Bench, Harvest | 10 | | | | | | | | | | | Barrels | 10 | |
| Buffet | 30 | | | | | **PORCH & OUTDOOR** | | | | | | Boxes, Wooden | 3 | |
| Cabinet, Corner | 20 | | | | | | | | | | | Boxes, Wooden | 5 | |
| Cabinet, China | 25 | | | | | Barbecue or Port. Grill | 10 | | | | | Boxes, Wooden | 10 | |
| Chair, Dining | 5 | | | | | Bath, Bird | 5 | | | | | Boxes, Wooden | 15 | |
| Server | 15 | | | | | Chairs, Lawn | 5 | | | | | Boxes, Wooden | 20 | |
| Sideboard | 30 | | | | | Chairs, Porch | 5 | | | | | Carton | | |
| **FLOOR & WALL COVERINGS** | | | | | | Clothes Dryer Rack | 5 | | | | | Less than 1 1/2 cu. ft. | | |
| Tea Cart | 10 | | | | | Clothes Dryer Rack | 5 | | | | | 3 cu. ft. | | |
| Rugs, Large or Pad | 10 | | | | | Garden Hose and Tools | 10 | | | | | 4 1/2 cu. ft. | | |
| Rugs, Small or Pad | 3 | | | | | Lawn Roller | 20 | | | | | 6 cu. ft. | | |
| | | | | | | Ladder, Extension | 10 | | | | | 6 1/2 cu. ft. | | |
| **BEDROOM** | | | | | | Lawn Mower (Hand) | 5 | | | | | **Wardrobe Furniture** | | |
| Bed incl. Spring & Mattress | | | | | | Lawn Mower (Power) | 15 | | | | | Wardrobe | 15 | |
| Bed, Double | 60 | | | | | Lawn Mower (Riding) | 35 | | | | | | | |
| Bed, King Size | 70 | | | | | Leaf Sweeper | 5 | | | | | **FURNITURE** | | |
| Bed, Single or Hollywood | 40 | | | | | Outdoor Child's Slide | 10 | | | | | Barrels | 10 | |
| Bed, Rollaway | 30 | | | | | Outdoor Child's Gym | 20 | | | | | Boxes, Wooden | 3 | |
| Bed, Bunk (Set of 2) | 70 | | | | | Outdoor Drying Racks | 5 | | | | | Boxes, Wooden | 5 | |
| Bookshelves, Sectional | 5 | | | | | Outdoor Swings | 10 | | | | | Boxes, Wooden | 10 | |
| Bureau, Dresser, Chest of | | | | | | Picnic Table | 20 | | | | | Boxes, Wooden | 15 | |
| Drawers, Childs, or Cloths | 25 | | | | | Picnic Bench | 5 | | | | | Boxes, Wooden | 20 | |
| Cedar Chest | 15 | | | | | Porch Chair | 10 | | | | | Carton | | |
| Chest, Rocker | 10 | | | | | Rocker, Swing | 15 | | | | | Less than 1 1/2 cu. ft. | | |
| Chair, Straight or Rocker | 5 | | | | | Rocker, Lawn | 15 | | | | | 1 1/2 cu. ft. | | |
| Chaise Lounge | 20 | | | | | Rug, Large | 7 | | | | | 3 cu. ft. | | |
| Desk, Small or Winthrop | 22 | | | | | Rug, Small | 3 | | | | | 4 1/2 cu. ft. | | |
| Dresser or Vanity Bench | 5 | | | | | Sand Box | 10 | | | | | 6 cu. ft. | | |
| Dresser Dbl. (Mr. & Mrs.) | 50 | | | | | Spreader | 2 | | | | | 6 1/2 cu. ft. | | |
| Night Table | 5 | | | | | Table | 10 | | | | | | | |
| Rug, Large or Pad | 10 | | | | | Umbrella | 5 | | | | | Wardrobe Furnished | | |
| Rug, Small or Pad | 3 | | | | | Wheelbarrow | 5 | | | | | by carrier | 15 | |
| Vanity Dresser | 20 | | | | | | | | | | | | | |
| Wardrobe, Small | 20 | | | | | | | | | | | **RECAP** | | |
| Wardrobe, Large | 40 | | | | | Ash or Trash Can | 5 | | | | | Total Col. 1 | | |
| **NURSERY** | | | | | | Bicycle | 10 | | | | | Total Col. 2 | | |
| Bathinette | 5 | | | | | Bird Cage & Stand | 2 | | | | | Total Col. 3 | | |
| Bed, Youth | 30 | | | | | Card Table | 1 | | | | | | | |
| Chair, Childs | 5 | | | | | | | | | | | | | |

08/16/2005 03:49 FAX 5087219101    ALL PRO MOVING & STORAGE    ☒003/004

| ARTICLE — LIVING AND FAMILY ROOMS | Cu. Ft. | | | | | ARTICLE — NURSERY | Cu. Ft. | | | ARTICLE — MISCELLANEOUS | Cu. Ft. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Bar, Portable | 15 | | | | | Chair, High | 5 | | | Carriage, Baby | 20 | | |
| Bench, Fireside or Piano | 5 | | | | | Chest | 12 | | | Chairs, Folding | 1 | | |
| Bookcase | 20 | | | | | Chest, Toy | 6 | | | Clothes, Hamper | 5 | | |
| Bookshelves, Sectional | 5 | | | | | Crib, Baby | 10 | | | Cot, Folding | 10 | | |
| Chair, Arm | 10 | | | | | Table, Child | 5 | | | Desk, Office | 30 | | |
| Chair, Occasional | 10 | | | | | Playpen | 10 | | | Fan | 2 | | |
| Chair, Oversized | 25 | | | | | Rug, Large or Pad | 10 | | | Fernery or Plant Stands | 10 | | |
| Chair, Rocker | 12 | | | | | Rug, Small or Pad | 3 | | | Foot Lockers | 5 | | |
| Chair, Straight | 5 | | | | | | | | | Garbage Cans | 5 | | |
| Clock, Grandfather | 20 | | | | | KITCHEN | | | | Golf Bag | 7 | | |
| Day Bed | 30 | | | | | Breakfast Suite Chairs | 5 | | | Heater, Gas or Electric | 5 | | |
| Desk, Small or Winthrop | 22 | | | | | Breakfast Table | 10 | | | Metal Shelves | 5 | | |
| Desk, Secretary | 35 | | | | | Chair, High | 5 | | | Personal Computer | 4 | | |
| Foot Stool | 2 | | | | | Ironing Board | 2 | | | Monitor | 4 | | |
| Fireplace Equipment | 5 | | | | | Kitchen Cabinet | 30 | | | Printer | 5 | | |
| Lamp, Floor or Pole | 3 | | | | | Roaster | 2 | | | Ping Pong Table | 20 | | |
| Magazine Rack | 2 | | | | | Microwave Oven | 10 | | | Pool Table | 40 | | |
| Music Cabinet | 10 | | | | | Serving Cart | 16 | | | Power Tools | 20 | | |
| Piano, Baby, Gr. or Upr. | 70 | | | | | Stool | 2 | | | Sewing Machine | 10 | | |
| Piano, Parlor Grand | 90 | | | | | Utility Cabinet | 10 | | | Sled | 2 | | |
| Piano, Spinet | 60 | | | | | Vegetable Bin | 3 | | | Step Ladder | 5 | | |
| Radio, Table | 2 | | | | | | | | | Suitcase | 5 | | |
| Record Player, Port. | 2 | | | | | APPLIANCES | | | | Table, Utility | 5 | | |
| Rugs, Large Roll or Pad | 10 | | | | | Air Conditioner, Window | 30 | | | Tackle Box | 1 | | |
| Rugs, Small Roll or Pad | 3 | | | | | Dehumidifier | 10 | | | Tool Box | 10 | | |
| Sofa, 2 Cushions | 35 | | | | | Dishwasher | 15 | | | Tricycle | 5 | | |
| Sofa, 3 Cushions | 50 | | | | | Dryer, Electric or Gas | 25 | | | Wagon, Child's | 5 | | |
| Sofa, 4 Cushions | 60 | | | | | Freezer (Cu. Capacity) | | | | Waste Paper Basket | 2 | | |
| Sofa, Sectional per Sect. | 30 | | | | | 10 or Less | 30 | | | Work Bench | 20 | | |
| Stereo Component | 6 | | | | | 11 to 16 cu. ft. | 45 | | | | | | |
| Stereo | 20 | | | | | 16 and over | 60 | | | | | | |
| Stool, Couch or Hideabed | 50 | | | | | Ironer or Mangle | 15 | | | OTHER ITEMS (Specify) | | | |
| Tables, Drop/Leaves | 12 | | | | | Range, Electric or Gas | 30 | | | | | | |
| Tables, Coffee, End or Nest | 5 | | | | | Refrigerator (Cu. Capacity) | | | | | | | |
| Telephone, Stand & Chair | 5 | | | | | 6 cu. ft. or less | 30 | | | CONTAINER (To Be Packed By Shipper) | | | |
| Television, Bigscreen | 40 | | | | | 7 to 10 cu. ft. | 45 | | | | | | |
| Television, Combination | 25 | | | | | 11 cu. ft. and over | 60 | | | Barrels | 10 | | |
| TV or Radio Console | 15 | | | | | Vacuum Cleaner | 5 | | | Boxes, Wooden | 3 | | |
| Television Table Model | 10 | | | | | Washing Machine | 25 | | | Boxes, Wooden | 5 | | |
| | | | | | | | | | | Boxes, Wooden | 10 | | |
| DINING ROOM | | | | | | PORCH, OUTDOOR FURNITURE & EQUIPMENT | | | | Boxes, Wooden | 20 | | |
| Bench, Harvest | 10 | | | | | Barbecue or Port. Grill | 10 | | | Carton | | | |
| Buffet | 30 | | | | | Bath, Bird | 5 | | | Less than 1 1/2 cu. ft. | | | |
| Cabinet, Corner | 20 | | | | | Chairs, Lawn | 5 | | | 1 1/2 cu. ft. | | | |
| Cabinet, China | 25 | | | | | Chairs, Porch | 10 | | | 3 cu. ft. | | | |
| Chair, Dining | 5 | | | | | Clothes Line | 5 | | | 4 1/2 cu. ft. | | | |
| Server | 15 | | | | | Clothes Dryer Rack | 5 | | | 6 1/2 cu. ft. | | | |
| Table, Dining | 30 | | | | | Garden Hose and Table | 10 | | | Wardrobe Furnished | | | |
| Tea Cart | 15 | | | | | Glider or Settee | 20 | | | by carrier | 16 | | |
| Rugs, Large or Pad | 10 | | | | | Ladder, Extension | 10 | | | | | | |
| Rugs, Small or Pad | 3 | | | | | Lawn Mower (Hand) | 5 | | | CONTAINERS (To Be Packed By Carrier) | | | |
| | | | | | | Lawn Mower (Power) | 15 | | | | | | |
| BEDROOM | | | | | | Lawn Mower (Riding) | 25 | | | Barrels | 10 | | |
| Bed Incl. Spring & Mattress | | | | | | Leaf Sweeper | 5 | | | Boxes, Wooden | 3 | | |
| Bed, Double | 60 | | | | | Outdoor Child's Slide | 10 | | | Boxes, Wooden | 5 | | |
| Bed, King Size | 70 | | | | | Outdoor Child's Gym | 20 | | | Boxes, Wooden | 10 | | |
| Bed, Single or Hollywood | 40 | | | | | Outdoor Drying Racks | 5 | | | Boxes, Wooden | 16 | | |
| Bed, Rollaway | 20 | | | | | Outdoor Swings | 30 | | | Boxes, Wooden | 20 | | |
| Bed, Bunk (Set of 2) | 70 | | | | | Picnic Table | 20 | | | Carton | | | |
| Bookshelves, Sectional | 5 | | | | | Picnic Bench | 5 | | | Less than 1 1/2 cu. ft. | | | |
| Bureau, Dresser, Chest of | | | | | | Porch Chair | 10 | | | 1 1/2 cu. ft. | | | |
| Dr'w'rs, Dbltho. or Chtbc. | 25 | | | | | Rocker, Swing | 15 | | | 3 cu. ft. | | | |
| Cedar Chest | 15 | | | | | Roller, Lawn | 15 | | | 4 1/2 cu. ft. | | | |
| Chais Rouble | 10 | | | | | Rug, Large | 7 | | | 6 cu. ft. | | | |
| Chair, Straight or Rocker | 5 | | | | | Rug, Small | 3 | | | 6 1/2 cu. ft. | | | |
| Chaise Lounge | 25 | | | | | Sand Box | 10 | | | Wardrobe Furnished | | | |
| Desk, Small or Winthrop | 22 | | | | | Spreader | 1 | | | by carrier | 15 | | |
| Dresser or Vanity Bench | 3 | | | | | Table | 10 | | | | | | |
| Dresser Dbl. (Mr. & Mrs.) | 50 | | | | | Umbrella | 5 | | | TOTALS | | | |
| Night Table | 5 | | | | | Wheelbarrow | 5 | | | Sub-Total Col. 3 | | | |
| Rug, Large or Pad | 10 | | | | | | | | | Total Col. 1 | | | |
| Rug, Small or Pad | 3 | | | | | MISCELLANEOUS | | | | Total Col. 2 | | | |
| Vanity Dresser | 20 | | | | | Ash or Trash Can | 7 | | | Total Col. 3 | | | |
| Wardrobe, Small | 20 | | | | | Basket (Clothes) | 5 | | | | | | |
| Wardrobe, Large | 40 | | | | | Bicycle | 10 | | | GRAND TOTAL | | | |
| | | | | | | Bird Cage & Stand | 5 | | | | | | |
| NURSERY | | | | | | Card Table | 1 | | | Est. Cu. @ ___ lbs. per cu. | 9921 lbs. | | |
| Bathinette | 5 | | | | | Cabinet, Filing | 20 | | | Estimated Total Weight | | | |
| Bed, Youth | 30 | | | | | | | | | | | | |
| Chair, Childs | 3 | | | | | | | | | | | | |

14321

# TABLE OF MEASUREMENTS

## ARTICLE — LIVING AND FAMILY ROOMS

| Article | Cu. Ft. |
|---|---|
| Bar, Portable | 15 |
| Bench, Fireside or Piano | |
| Bookcase | 20 |
| Bookshelves, Sectional | 5 |
| Chair, Arm | 10 |
| Chair, Occasional | 15 |
| Chair, Overstuffed | 25 |
| Chair, Rocker | 12 |
| Chair, Straight | 5 |
| Clock, Grandfather | 20 |
| Day Bed | 30 |
| Desk, Small or Winthrop | 22 |
| Desk, Secretary | 35 |
| Fireplace Equipment | 5 |
| Foot Stool | 2 |
| Lamp, Floor or Pole | 3 |
| Magazine Rack | 2 |
| Music Cabinet | 10 |
| Piano, Baby Gr. or Upr. | 70 |
| Piano, Parlor Grand | 100 |
| Piano, Spinet | 60 |
| Radio, Table | 2 |
| Record Player, Port. | |
| Rugs, Large Roll or Pad | 10 |
| Rugs, Small Roll or Pad | 5 |
| Sofa, 2 Cushions | 35 |
| Sofa, 3 Cushions | 50 |
| Sofa, 4 Cushions | 60 |
| Sofa, Sectional per Sect. | 30 |
| Stereo Component | |
| Steps | 20 |
| Sofa, Couch or Hideabed | 60 |
| Tables, Drop-Leaf etc. | 12 |
| Table, Coffee, End or Nest | 5 |
| Telephone Stand & Chair | |
| Television, Bigscreen | 40 |
| Television, Combination | 25 |
| TV or Radio Console | 10 |
| Television Table Model | 10 |

## DINING ROOM

| Article | Cu. Ft. |
|---|---|
| Bench, Harvest | 10 |
| Buffet | 30 |
| Cabinet, Corner | 25 |
| Cabinet, China | 25 |
| Chair, Dining | |
| Server | |
| Table, Dining | |
| Tea Cart | 10 |
| Rugs, Large or Pad | 20 |
| Rugs, Small or Pad | 10 |

## BEDROOM

| Article | Cu. Ft. |
|---|---|
| Bed, Incl. Spring & Mattress | |
| Bed, Double | 60 |
| Bed, King Size | 70 |
| Bed, Single or Hollywood | 40 |
| Bed, Rollaway | 20 |
| Bed, Bunk (Set of 2) | 70 |
| Bookshelves, Sectional | 5 |
| Bureau, Dresser, Chest of | |
| Drawers, Chiffon. or Chifr. | 25 |
| Cedar Chest | 15 |
| Chair, Boudoir | 10 |
| Chair, Straight or Rocker | 5 |
| Chaise Lounge | 25 |
| Desk, Small or Winthrop | 22 |
| Dresser or Vanity Bench | 3 |
| Dresser Dbl. (Mr. & Mrs.) | 50 |
| Night Table | 5 |
| Rug, Large or Pad | 10 |
| Rug, Small or Pad | 5 |
| Vanity Dresser | 20 |
| Wardrobe, Small | 20 |
| Wardrobe, Large | 40 |

## NURSERY

| Article | Cu. Ft. |
|---|---|
| Bathinette | |
| Bed, Youth | 30 |
| Chair, Childs | |

## KITCHEN

| Article | Cu. Ft. |
|---|---|
| Chair, High | 5 |
| Chest | 12 |
| Chest, Toy | 5 |
| Crib, Baby | 8 |
| Table, Child | 7 |
| Playpen | 10 |
| Rug, Large or Pad | 10 |
| Rug, Small or Pad | 5 |

| Breakfast Table Chairs | 5 |
| Breakfast Table | 10 |
| Chair, High | 5 |
| Ironing Board | |
| Kitchen Cabinet | 20 |
| Roaster | |
| Microwave Oven | |
| Serving Cart | 15 |
| Stool | |
| Table | |
| Utility Cabinet | 10 |
| Vegetable Bin | 3 |

## APPLIANCES, ETC.

| Article | Cu. Ft. |
|---|---|
| Air Conditioner, Window | 20 |
| Dehumidifier | 10 |
| Dishwasher | 20 |
| Dryer, Electric or Gas | 25 |
| Freezer (Cu. Capacity) | |
| 10 or Less | 30 |
| 11 to 14 | 40 |
| 16 and over | 60 |
| Ironer or Mangle | 12 |
| Range, Electric or Gas | 30 |
| Refrigerator (Cu. Capacity) | |
| 6 cu. ft. or less | 30 |
| 7 to 10 cu. ft. | 45 |
| 11 cu. ft. and over | 60 |
| Vacuum Cleaner | |
| Washing Machine | 25 |

## PORCH, OUTDOOR, GARDEN

| Article | Cu. Ft. |
|---|---|
| Barbecue Grill | |
| Chair, Lawn | 5 |
| Chair, Porch | |
| Chair, Rollaway | |
| Clothes Dryer Rack | |
| Garden Hose and Tools | 10 |
| Glider or Settee | |
| Lawn Mower (Hand) | |
| Lawn Mower (Power) | 15 |
| Lawn Mower (Riding) | 35 |
| Sandbox | |
| Slide (Child's Slide) | 10 |
| Swing (Child's Gym) | 20 |
| Outdoor Drying Racks | |
| Garden Furniture | |
| Picnic Table | 20 |
| Pool, Wading | 10 |
| Rocker, Lawn | 10 |
| Rug, Large | 7 |
| Rug, Small | |
| Seed Box | 10 |
| Spreader | 1 |
| Table | |
| Umbrella | |
| Miscellaneous | |

## MISCELLANEOUS

| Article | Cu. Ft. |
|---|---|
| Carriage, Baby | 20 |
| Chairs, Folding | 1 |
| Clothes Hamper | 5 |
| Cot, Folding | |
| Desk, Office | 20 |
| Fan | 5 |
| Fernery or Plant Stands | 10 |
| Foot Lockers | 5 |
| Garbage Cans | 7 |
| Golf Bag | 2 |
| Heater, Gas or Electric | 5 |
| Metal Shelves | |
| Personal Computer | 4 |
| Monitor | |
| Printer | |
| Ping Pong Table | 30 |
| Pool Table | 40 |
| Power Tools | 30 |
| Sewing Machine | 10 |
| Sled | 2 |
| Step Ladder | |
| Suitcase | 5 |
| Table, Utility | |
| Tackle Box | |
| Tool Box | 10 |
| Tricycle | 5 |
| Wagon, Child's | 5 |
| Waste Paper Basket | 1 |
| Work Bench | 20 |

09/06/2005 TUE 10:04  FAX 781 395 3569 JOHN H MOLLOY ESQ                    ☑001/008

# JOHN H. MOLLOY
### ATTORNEY AT LAW

385 Broadway, Suite 402
Revere, Massachusetts 02151
Telephone: 781-284-9934
Facsimile: 781-284-5301

Robert B. Burns, Esquire
Sean F. Donahue, Esquire
Sergio P. Vespa, Esquire (of counsel)

3353 Washington Street
Jamaica Plain, Massachusetts 02130
Telephone: 617-522-9701
Facsimile: 617-522-9703

*Please direct all correspondence to the Medford Office

September 6, 2005

379 Salem Street
Medford, Massachusetts 02155
Telephone: 781-395-3569
Facsimile: 781-395-4165

### VIA FACSIMILE (617) 951-2819 AND MAIL

Attorney Wesley S. Chused
Looney & Grossman, LLP
101 Arch Street
Boston, MA  02110-112

RE:  Janice Camillo v. All Pro Moving & Storage, Inc.

Dear Attorney Chused:

As you know, this office represents Janice Camillo ("Janice") with respect to transportation of her household goods by your client, All Pro Moving & Storage, Inc ("All Pro"). This letter shall confirm our telephone conversations of August 23rd and August 31, 2005. As discussed, Janice refuses to post $7,974.02 *prior* to delivery, and hereby demands disclosure of the location of her property and an opportunity to inspect the same. Based on your representations to me, the property is still in storage and ought to be in the same condition as it was at the time of pick-up. You said that there is no legal authority to inspect the property. And, if, by chance, I found such authority then you would speak to your client. For all of the following reasons, it is Janice's position that All Pro does not have a lawful carrier's lien on her property and that, in the circumstances, the agents and/or employees of All Pro have wrongfully converted her property to their own use.

1. Pre-Transportation of Goods:

On or about June 30, 2005, a member of the Camillo family telephoned All Pro after finding its' advertisement in a telephone book, and requested an estimate for the cost to move from Boston to Georgia. The advertisement read, in part, that All Pro has "Professionals moving professionals . . . courteous and quality trained personnel . . . [and] always guaranteed prices."

On July 5, 2005, All Pro estimator Mark Kariban visited the Camillo home, in Boston, to give Janice an estimate of her move. Janice gave Kariban a tour of her home and identified the property and other belongings that needed to be moved. Based on Kariban's estimate and representations, Janice ultimately chose All Pro to move her household belongings.

09/06/2005 TUE 10:05  FAX 781 395 3569 JOHN H MOLLOY ESQ                    002/008



At all material times relevant hereto, neither Kariban nor any other agent or employee of All Pro provided Janice with:

    a.   A copy of the booklet entitled, "Your Rights and Responsibilities When You Move," a document the Interstate Commerce Commission requires to be given to all shipping customers;

    b.   A written description of All Pro's procedure for responding to complaints and inquiries;

    c.   An accurate estimate of charges;

    d.   A summary of All Pro's arbitration program;

    e.   A copy of the insurance policy or other appropriate evidence of the insurance that Janice purchased, if any, from All Pro; and,

    f.   The form of payment that All Pro would honor at delivery (this information was provided to Janice's daughter on July 13th after one truck had already been loaded that previous day, but never to Janice who was not present when the information was given to her daughter).

Additionally, prior to transporting any goods, All Pro intentionally misquoted the charges of moving Janice's property. The initial estimate, albeit a non-binding estimate, was set by Kariban on July 5th in the sum of $7,249.11 (See, *Estimated Cost of Service*, a copy of which is attached hereto as Exhibit 1). However, All Pro subsequently increased that estimate on July 12, 2005, when its' agents or employees arrived at Janice's home to begin loading their truck. (See, document entitled, *"All Pro Van Lines,* a copy of which is attached hereto as Exhibit 2). That increased estimate, which, arguably, was a binding estimate, was in the sum total of $9,785.01, and dated June 30, 2005. As reflected on the document, the estimate was reduced by an agent or employee of All Pro in Janice's presence, to an amount of $7,200.00, which Janice contends is also a binding estimate, just before loading began on July 12th.

Janice and her children claim that agents and employees of All Pro were deliberately belligerent and intimidating in their manner towards Janice. Because of this, and the Camillo family's desperate need to move from their Boston home, her daughter Shalaye signed documents on July 13th based on representations made by an agent or employee of All Pro that Janice, who, at that time, was not present, nor privy to Shalaye's actions, had signed similar documents that previous day, all of which had been lost by All Pro. Based on my review of those documents, copies of which were received from you by way of fax, yet never provided to Janice or any of her daughters by All Pro, evidences *Janice's* signature on the Order of Service dated July 12th and *Shalaye's* signature on the Order of Service dated July 13th. The Order of Service dated July 12th fails to disclose any service charges or relevant shipping information, nor was it signed by anyone in behalf of All Pro.

The Order of Service dated July 13th and corresponding Bill of Laden reflects services charges in the sum total of $9,451.37, and, like the previously-mentioned Order of Service, it, too, was not executed by anyone in behalf of All Pro. As the two copies of the Bills of Laden that you faxed to me are barely legible, I reserve comment on each of them until a later time. However, like the said Orders of Service, neither Janice nor any of her daughters ever received a copy of either Bill of Laden before All Pro drove off with their property.

During the initial stages of their business relationship, All Pro had informed Janice that the entire move could be completed with a single-trailor, yet on July 12th All Pro informed Janice that it would require two trailor-less trucks because of the difficulty of navigating a trailor thru her Mattapan neighborhood. Also during her negotiation with All Pro, Janice was told by an agent or employee of All Pro that, in the circumstances, the company's maximum limit of liability is ten thousand dollars.

2. Transportation and Arrival In Georgia:

All Pro's two loaded trucks left Janice's home, in Mattapan, individually, on July 12th and July 13th, respectively. On July 14th, Janice was informed by All Pro that the price had increased to a total amount of $9,400.00, including additional insurance at a cost of $290.00, plus all taxes.

On or about July 20th, Janice arrived in Georgia in anticipation of the delivery of her household goods. Several dates were scheduled for delivery and then cancelled. On or about July 25th, Mrs. Camillo met with two agents or employees of All Pro at a weigh station in Georgia. At that time, Janice was informed that one of the two loaded trucks had been placed in storage because the truck had to be returned to Boston. Janice was also informed that All Pro intended to unload the remaining truck and obtain her property from storage using the same truck and, subsequently, deliver the property to her new home.

In your letter to me dated August 16, 2005, you wrote that,

> "The loaded weight of the first truck was 28,360 pounds. Subtracting the empty weight (16,100 pounds) of the truck, a 2004 Freightliner Model M2 Straight Truck, diesel powered, resulted in a net weight of the first portion of her shipment of **12,260 pounds**. The loaded weight of the second (identical) truck was **24,220 pounds**, which resulted in a net weight of the second portion of her shipment of **8,220 pounds**. As a result, the total weight of her shipment was **20,480 pounds**. Copies of both "loaded" weight slips were also faxed to you earlier today. Although the weight slip for the second truck (Providence & Worcester Railroad Co. "weigh slip") is barely legible on the enclosed copy, I am informed that it shows a loaded weight of 24,220 pounds, and I have no reason to doubt that figure."

However, in the circumstances, I do have reason to doubt that figure as the weigh slip is devoid of any information required under the Title 49, Code of Federal Regulations, § 375.519 including:

1. Weigh master's signature;
2. The date of weighing;
3. The identification of the weight entries as being the tare, gross or net weights;
4. The company or carrier identification of the vehicle;
5. The last name of the individual shipper as it appears on the bill of lading;
6. All Pro's shipment registration or bill of lading number.

Additionally, at no material times relevant hereto was Janice Camillo presented with either one of the weigh slips that you faxed to me.

Interestingly, when the first truck was weighed in the State of Georgia approximately twelve days later, the loaded weight was **29,460 pounds**, which is exactly 1,100 pounds more than the original weighing that allegedly occurred at Flynn's Truck Stop, in Shrewsbury, Massachusetts. *(See,* copy of *Certified Automated Truck Scale,* a copy of which is attached hereto as Exhibit 3). The significance of the second weighing, which occurred at Janice's request, in the State of Georgia, is that is brings the accuracy of the loaded weight of the truck into question, thereby validating any possibility of discrepancy in the loaded weight of the second truck, which you candidly claim is 24,220 pounds.

When the truck physically arrived at Janice's property in Georgia, an agent or employee of All Pro demanded payment of $9,700.00, in advance, before unloading the truck. That demand was also reiterated by All Pro owner Elijia Bowles, III, who spoke to Janice that day. Janice was told that upon full-payment of $9,700.00, All Pro would unload her property and later retrieve the remaining property from storage, weigh it, and make delivery. Janice asked to inspect the property, yet her request was denied. Janice was not permitted to inspect the property inside the truck when it pulled up outside her home, nor was she allowed to inspect the property that was allegedly being held in storage.

According to Title 49 Code of Federal Regulations § 375.503 (d), "Upon delivery, [All Pro] . . . must provide [Janice] . . . with the opportunity to observe and verify that the same articles are being delivered and the condition of those articles.  [All Pro] . . . must also provide [Janice] . . . the opportunity to note in writing any missing articles and the condition of any damaged or destroyed articles . . . ." Despite repeated requests to observe and verify that the same articles are being delivered and the condition of those articles, All Pro has refused, and continues to refuse, to comply with the said regulation and further has refused, and continues to refuse, to provide Janice with any information regarding the current location(s) of her property.

3.  <u>Proposal Toward Resolving Dispute:</u>

Janice is an "unsophisticated shipper" who was misled and exploited by All Pro who, in turn, took advantage of her inexperience and engaged in conduct violative of M.G.L. Chapter 93A. Janice currently stays in her new home, in Georgia, without any of her household goods.

In the interest of resolving this immediate dispute between Janice Camillo and All Pro Moving & Storage, Inc., I am asking you, once again, to ask your client to reveal the location of Janice Camillo's household goods and allow inspection, forthwith.

I anxiously await your response.

Very truly yours,

Sean F. Donahue

09/06/2005 TUE 10:06  FAX 781 395 3569 JOHN H MOLLOY ESQ                    ☑ 006/008

# ESTIMATED COST OF SERVICES *Exhibit*

MC 323997

## ALL PRO MOVING & STORAGE
### AGENT FOR ALL PRO VAN LINES
### 100 LAMARTINE STREET
### WORCESTER, MA 01608
### (508) 890-1100

*MARK 978 996-8565*

| | | |
|---|---|---|
| Name of shipper | *Janice Camille* | DATE *9/5/05* Phone No. |
| Address of shipper | *31 Whitington Hill St* | Zip code |
| Shipment moving from | *Whittinton (East) MA* to *Irving GA* | |
| Shipper's destination contact | | Phone No. |

| Packing Date Requested | Loading Date Requested *7/7/05* | Delivery Date or period of time requested |
|---|---|---|

**IMPORTANT NOTICE:** This estimate covers only the articles and services listed. It is not a guarantee that the actual charges will not exceed the amount of the estimate. Common carriers are required by law to collect transportation and other incidental charges computed on the basis of rates shown in their lawfully published tariffs, regardless of prior rate quotations or estimates made by the carrier or its agents. Exact charges for loading, transporting, and unloading are based upon the weight of the goods transported, and such charges may not be determined prior to the time the goods are loaded on the van and weighed. Charges for additional services will be added to the transportation charges.

| RULE | SEC. | ITEM | SERVICES | | CHARGES | |
|---|---|---|---|---|---|---|
| | | | Transportation FROM ZIP          TO ZIP | | 6284 25 | |
| | | | Origin/Destination Fee | | 328 90 | |
| | | | Fuel Surcharge (when applicable) | | 384 21 | |
| | | | Insurance Surcharge (when applicable) | | | |
| | | | Valuation | | | |
| | | | Containers, Packing & Unpacking | | | |
| | | | Storage-In-Transit at ZIP Location | | | |
| | | | Date In _____ Date Out _____ | | | |
| | | | SIT Pickup and Delivery | | | |
| | | | Extra Pickups or Deliveries No._____ at ZIP(s) | | | |
| | | | Extra Labor, Special Services or Waiting Time  *Stairs* | | 321 75 | |
| | | | Bulky Articles | | | |
| | | | Additional Weight Additives | | | |
| | | | Advanced Charges | | | |
| | | | Shuttle Service | | | |
| | | | Self-Storage/Mini-Warehouse Pickups or Deliveries | | | |
| | | | Overtime Pickups or Deliveries | | | |
| | | | Other Additional Services | | | |

TOTAL ESTIMATED COST $ *7211.11*

If the total tariff charges for the listed articles and services exceed this estimate by more than ten percent, then, upon your request, the carrier must relinquish possession of your shipment upon delivery in advance of the payment of the total amount of tariff charges shown on the bill of lading or freight bill. You are still obligated to pay the balance of the total charges within 15 days.

Maximum amount to be paid on delivery of your C.O.D. shipment in cash, certified check or money order is (total estimated cost plus 10 percent):

$ *7249.11*

### FULL AND CUSTOM CONTAINER SERVICE

| FULL SERVICE | CONTAINERS & PACKING | $ | UNPACKING | $ |
|---|---|---|---|---|

| CUSTOM SERVICE | CONTAINERS & PACKING | | UNPACKING | |
|---|---|---|---|---|
| CARTON DESCRIPTION | QUANTITY | | QUANTITY | |
| DISH PACKS | | | *1598* | |
| CARTONS | Less Than 3 cft. | | | |
| CARTONS | 3 cft. | | *626 Mcdoc* | |
| CARTONS | 4.5 | | | |
| CARTONS | 6 | | *(67* | |
| CARTONS | 6.5 | | | |
| WARDROBE, CTN. | | | | |
| CRIB MATTRESS CTN. | | | *700.00* | |
| MATTRESS CTN., TWIN/TWIN LONG | | | | |
| MATTRESS CTN., DOUBLE (NOT EXCEEDING 54" X 75") | | | | |
| MATTRESS CTN., KING/QU. (EXCEEDING 54" X 75") | | | | |
| HEAVY DUTY | | | *Box Stop    Lee* | |
| OTHER | | | | *00* |
| OTHER | | | *617-061-1881* | |
| TOTAL CONTAINERS & PACKING | $ | | TOTAL UNPACKING | $ |

Remarks:

**NOTICE:** Articles not to be shipped should be indicated by a "check mark" in the column provided on the table of measurements. If the prospective individual shipper has not previously been furnished with the publication OCE-100, Your Rights and Responsibilities When You Move, a written description of the carrier's customer and inquiry handling procedures, a concise accurate summary of any dispute settlement procedures in which the carrier participates, and a copy of Form OCP-101 Annual Performance Report if the carrier has delivered 100 or more C.O.D. shipments to individual shippers in the preceding year, as required by the Surface Transportation Board, he should be furnished them at this time.

**NOTE:** For shipments with origin/destination in California; Customer agrees that title to all packing materials and other property sold to customer passes to customer prior to the transportation of such property to the customer by carrier. The sale of such

09/06/2005 TUE 10:07  FAX 781 395 3569 JOHN H MOLLOY ESQ                    ☑007/008



*REC. DAY of MOVE 7-12-05 Guys DIDN'T Moving Evsey Thing, HAVE TO Come BACK Tomoerow TO GET THE REST OF my Rooms*

*Exhibit 2*

**ALL PRO VAN LINES**
★ ★ ★ ★ ★
"PROFESSIONALS MOVING PROFESSIONALS"

100 Lamartine Street · Worcester, MA 01608
508-890-1100 · 978-630-4800 · 1-866-2-ALL-PRO

Date: 6/30/05

## PICK UP INFORMATION                    ## DESTINATION INFORMATION

Shipper: Janice Camillo              Consignee: _____

Origin Address: 31 Wellington Hill St    Dest. Address: _____

City, State: Mattapan, MA.           City, State: Smyrna, GA.

Country: _____             Country: _____

Telephone: 617-417-0678 cell         Telephone: 617-304-8971 cell

Pick Up Dates: 7/8/05                Delivery Dates: _____

Telephone Estimates · · · · · · · · · · Yes _____ No _____
Non Binding Estimate · · · · · · · · · Yes _____ No _____
Binding Estimate · · · · · · · · · · · Yes _____ No _____
Visual Estimate Performed · · · · · · Yes ✓ No _____

| | | EST. CONTAINERS | Cont. | Packing |
|---|---|---|---|---|
| Mileage · · · · · · · · · · · | 1051 | Dishes Barrels · · · · · · | | |
| Est. Weight · · · · · · · · | 18000 | 1.5 Cubic Ft. · · · · · · | | |
| Full Line Haul · · · · · · | 16917 | 3.0 Cubic Ft. · · · · · · | | |
| Percentage Cut · · · · · · | 50% | 4.5 Cubic Ft. · · · · · · | | |
| Charged Line Haul · · · · | 8458.50 | 6.0 Cubic Ft. · · · · · · | | |
| Bottom Line Haul · · · · | — | 6.5 Cubic Ft. · · · · · · | | |
| % Fuel · · · · · · · · · · | 507.51 | Wardrobes · · · · · · | | |
| Origin ATC · · 1.40 | 252.00 | Mirror Cartons · · · · | | |
| Dest. ATC · · 0x.90 | 162 | Matress: | | |
| Piano Charge · · · · · · | | Single-Double · · · · | | |
| Grandfather Clock · · · · | | King-Queen · · · · · · | | |
| Extra Pick-Up · · · · · · | | Crib · · · · · · · · | | |
| # 1 Flights Origin · · · · | 405 | Special Crates · · · · | | |
| # Flights Dest. · · · · · | | | | |
| Elevator Origin · · · · · | | | | |
| Elevator Dest. · · · · · · | | | | |
| Excessive Carry · · · · · | | | | |
| Washer Servicing · · · · | | | | |
| Valuation Ins · · · · · · | | | | |
| Containers/Packing · · · · | | Total Charge | | |
| TOTAL CHARGES · · · · | 9785.01 | $72.00 | | |

COMMENTS: _____

_____

_____

X _____Marc_____          Salesperson

Creative Graphics · 954-962-8868                    All Pro Van Lines/Form - 05/02

Exhibit 3

1-877 404-794-7772

CAT SCALE
COLLECTOR
CARD
INSIDE!

TICKET NUMBER ®

CERTIFIED
AUTOMATED
TRUCK
SCALE

CAT SCALE COMPANY
P.O. BOX 630
WALCOTT, IA 52773
(563) 284-6283
www.catscale.com

PUBLIC WEIGHMASTER'S
CERTIFICATE OF
WEIGHT & MEASURE

IMPRINT SEAL HERE
(IF APPLICABLE)

WEIGH NUMBER
7812

CUSTOMER COPY

The CAT Scale Company guarantees that our scales will give an accurate weight. What makes us different from other scale companies is that we back up our guarantee with cash.©

"WEIGH WHAT WE SAY OR WE PAY"®

If you get an overweight fine from the state AFTER one of our CAT Scales showed a legal weight, we will immediately check our scale and we will:

(1) Reimburse you for the cost of the overweight fine if our scale is wrong, OR
(2) A representative of CAT Scale Company will appear in court WITH the driver as an expert witness if we believe our scale was correct.

IF YOU SHOULD GET AN OVERWEIGHT FINE, YOU SHOULD DO THE FOLLOWING TO GET THE PROBLEM RESOLVED:

1) Post bond and request a court date.
2) Call CAT Scale Company direct 24 hours a day at 1-877-CAT-SCALE (Toll Free).
3) IMMEDIATELY send a copy of the citation, CAT Scale Ticket, your name, company, address, and phone number to CAT Scale Company Attn: Operations Manager.

DATE:        7-25-2005            STEER AXLE     10380 lb

                                 DRIVE AXLE     19080 lb

SCALE        828                 TRAILER AXLE      00 lb
LOCATION:    PETRO STOPPING CENTER
NORTH        I-285W AND EXIT 12   GROSS WEIGHT   29460 lb
1428         ATLANTA GA
13159A12 SCALE

* The four weights shown below are separate weights. The GROSS WEIGHT is the CERTIFIED WEIGHT and was weighed on a full length platform scale.

This is to certify that the following described merchandise was weighed, counted, or measured by a public or deputy weighmaster, and when properly signed and sealed shall be prima facia evidence of the accuracy of the weight shown as prescribed by law.

LIVESTOCK, PRODUCE, PROPERTY, COMMODITY, OR ARTICLE WEIGHED
FREIGHT ALL KINDS
COMPANY    ALL PRO                         TRACTOR #    9    TRAILER #    0

FEE    8.00        WEIGHMASTER OR          FULL WEIGH
                   WEIGHER SIGNATURE  ALAN ROBINSON   TICKET #
                                                      (IF REWEIGH)

DRIVER IN TRUCK UNLESS CHECKED HERE:

© 1999 CAT Scale Company® 6404

Standard Register ®  STANSET®

# Looney & Grossman LLP
### Attorneys at Law

Wesley S. Chused
Voicemail: Ext 551
Email: wchused@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone (617) 951-2800
Telecopier (617) 951-2819
www.lgllp.com

September 7, 2005

<u>**VIA FACSIMILE, (781) 395-4165**</u>
Sean F. Donahue, Esq.
379 Salem Street
Medford, MA 02155

Re:  **Janice Camillo v. All Pro Van Lines, Inc.**
  **Our File No. 12771.014**

Dear Mr. Donahue:

This is in response to your letter of September 6, 2005, which I have reviewed with my client, All Pro.

For the most part, the allegations in your letter are substantially the same as those made in Ms. Camillo's Verified Complaint, which All Pro has addressed in its Answer and Counterclaim. They were also addressed in my letter of August 16, 2005 to you and Mr. Molloy. Ms. Camillo rejected the settlement proposal described in my August 16 letter, which I repeated to you in our lengthy discussion of August 31, 2005. Nonetheless, I again extend the same proposal to her at this time so as to get her shipment delivered and stop the running of any further storage charges.

As you know, All Pro's view of the facts and circumstances giving rise to the present dispute are quite different from those described in your letter of September 6. Although there is obviously a disagreement over the original non-binding estimated weight versus the actual shipment weight, two key material facts are not disputed: All Pro's original estimate was in the sum of $7,249.11 for transporting approximately 14,321 pounds of freight and All Pro has been paid nothing.

All Pro denies your allegations that it failed to give to Ms. Camillo the "Your Rights and Responsibilities When You Move" booklet and related information. All Pro denies that it intentionally misquoted the charges for moving Ms. Camillo's shipment and, for good reason, believes that other friends or family members brought additional articles to Ms. Camillo's home *after* the original estimate was given. This belief is borne out by the fact that people other than Ms. Camillo contacted All Pro asking for the whereabouts and delivery of *their* goods. In any event, regardless of whether the actual weight of Ms. Camillo's shipment was 14,321 pounds,18,000 pounds or 20,000 pounds, and regardless of whether the shipment was delivered

L:\12771\014\Ltr\006 (Donahue).doc

# Looney & Grossman LLP

Sean F. Donahue, Esq.
Page 2
September 7, 2005


on one truck or two, which makes no legal, practical or material difference, All Pro was, has been and is ready, willing and able to deliver Ms. Camillo's shipment under the 110% rule, as I have previously indicated.

Moreover, your citation to 49 C.F.R. § 375.503(d) is completely out of context and materially misleading, to say the least. Section 375.503 addresses the carrier's duty to prepare an inventory of the household goods shipment, which All Pro did, and which Ms. Camillo signed. I previously faxed it to your office. The provisions of § 375.503(d) refer to the carrier's obligation to give the shipper a copy of the inventory at destination, whereupon the shipper has a right to note any condition defects at destination and sign it. That obligation is not triggered until there is a delivery, and there can be no delivery until Ms. Camillo pays All Pro 110% of the original estimated cost as I have set forth previously. That regulation does not justify or entitle Ms. Camilo to inspect her shipment while it is "in transit", which it is legally, as she now demands.

Your claim that Ms. Camillo is an "unsophisticated shipper" may or may not be true, but that is not a material issue here and does not alter the application of the 110% rule. All Pro denies that it misled or exploited Ms. Camillo. All Pro also denies any conduct allegedly in violation of M.G.L. c. 93A, which, in any event, is preempted based on the law I have previously given to you.

When we spoke last week, I invited you to give me some legal authority to substantiate the basis for your demand that Ms. Camillo is relieved of her obligation to pay All Pro's charges prior to delivery for the reasons stated in my August 16 letter. You have given me no such legal authority. Moreover, you have given me no legal authority to indicate that Ms. Camillo, contrary to overwhelming federal case law, is relieved of her duty to pay All Pro 110% of the original estimated charges on delivery.

With all due respect to Ms. Camillo's claims, I truly believe that it is in both our clients' best interests to have Ms. Camillo's shipment delivered to her as soon as possible so as to stop the accrual of any further storage charges and enable her to determine whether she even needs to file any loss or damage claim, which she may not have to. Our clients can then (after delivery) resolve any other disputes they may have (loss or damage to the shipment or transportation charges due over and above the 110%) after the delivery is made, but Ms. Camillo can at least stop the storage charges from accruing by making that payment.

On the last page of your September 6 letter, you state, "in the interest of resolving this immediate dispute . . . ." I find this statement disingenuous in view of the facts and applicable federal law and regulations. I proposed, back on August 16, 2005, a solution to resolve this dispute immediately, with the 110% payment being held by me in escrow until the delivery to

Looney & Grossman LLP
Sean F. Donahue, Esq.
Page 3
September 7, 2005

Ms. Camillo.  I fail to comprehend why that arrangement is not workable, feasible, reasonable and expedient in these circumstances, unless, of course, Ms. Camillo has and had no intention of ever paying anything to All Pro.

For all of the above reasons, All Pro's position remains that it is ready, willing and able to deliver Ms. Camillo's shipment upon the conditions described in my letter of August 16, 2005. If she would like to do this, which would be a wise thing considering that storage charges continue to accrue at the rate of $63.49 per day, please notify me as soon as possible.

Very truly yours,

Wesley S. Chused

WSC/dml
cc:    All Pro Van Lines, Inc.

L:\12771\014\Ltr\006 (Donahue).doc