UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANICE CAMILLO, | ) |
| | ) |
| Plaintiff, | ) DOCKET NO.: 05-11721-MLW |
| | ) |
| -v- | ) |
| | ) |
| ALL PRO MOVING & STORAGE, INC., | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S EXHIBITS

| Exhibit 1 | | All Pro Yellow Page Advertisement |
| Exhibit 2 | July 5, 2005 | Estimated Cost of Services |
| Exhibit 3 | June 30, 2005 | Pick Up Information |
| Exhibit 4 | July 12-13, 2005 | Inventory |
| Exhibit 5 | October 3, 2005 | 93A Demand Letter |
| Exhibit 6 | October 6, 2005 | Response to 93A Demand Letter |

**906 MOVERS**

verizon

• Burlington • Cambridge • Dedham

Brookline • Medford • Bedford • Arlington • Salem

## LOCAL & LONG DISTANCE MOVING

SERVING ALL OF BOSTON & SUBURBAN AREAS

# ALL PRO
★★★★★
## VAN LINES
*"PROFESSIONALS MOVING PROFESSIONALS"*

Visit Our Website at All-ProVanLines.com

- Furniture Quilt - Pad Wrapped Before Removal from Home AT NO EXTRA CHARGE
- Furniture Uncovered, Placed and Set Up in New Home
- We Do Not Require All Drawers To Be Emptied
- Courteous and Quality Trained Personnel
- New Padded Float-Pak Vans
- Automated Lifts
- VANS FUMIGATED DAILY
- Complete Packing & Unpacking Service
- Boston Direct Service
- Saturday & Short Notice Moves
- Weekly Trips To Maine & All States Between
- Residential & Office Moving
- Free Friendly Estimates-Competitive Prices
- Licensed Piano Movers
- Safe & Secure Storage
- Auto Transporter
- Always Written Guaranteed Prices For East Coast Moves

**617 267-5333**
**781-321-7888**

Visit Our Website at All-ProVanLines.com

• Boston • Quincy • Worcester • Lynn

33090 © 2005 Verizon Yellow Pages Company

# ESTIMATED COST OF SERVICES

**ALL PRO MOVING & STORAGE**
AGENT FOR ALL PRO VAN LINES
100 LAMARTINE STREET
WORCESTER, MA 01608
(508) 890-1100

MC 323997

MARK 978 996-8565

DATE: 7/5/05

Name of shipper: Janice Camillo
Address of shipper: 31 Wellington Hill St.
Shipment moving from: Mattapan (Boston) MA to 2 mys in GA.
Shipper's destination contact: _____
Phone No.: _____
Zip code: _____
Phone No.: _____

Packing Date Requested: _____
Loading Date Requested: 7/7/05
Delivery Date or period of time requested: _____

IMPORTANT NOTICE: This estimate covers only the articles and services listed. It is not a guarantee that the actual charges will not exceed the amount of the estimate. Common carriers are required by law to collect transportation and other incidental charges computed on the basis of rates shown in their lawfully published tariffs, regardless of price rate quotations or estimates made by the carrier or its agents. Exact charges for loading, transporting, and unloading are based upon the weight of the goods transported, and such charges may not be determined prior to the time the goods are loaded on the van and weighed. Charges for additional services will be added to the transportation charges.

| RULE | SEC. | ITEM | SERVICES | CHARGES |
|------|------|------|----------|---------|
| | | | Transportation FROM ZIP    TO ZIP | 6284.25 |
| | | | Origin/Destination Fee | 328.90 |
| | | | Fuel Surcharge (when applicable) | 314.21 |
| | | | Insurance Surcharge (when applicable) | |
| | | | Valuation | |
| | | | Containers, Packing & Unpacking | |
| | | | Storage-In-Transit at ZIP Location___ Date In___ Date Out___ | |
| | | | SIT Pickup and Delivery | |
| | | | Extra Pickups or Deliveries No.___ at ZIP(s)___ | |
| | | | Extra Labor, Special Services or Waiting Time   2 hrs | 321.75 |
| | | | Bulky Articles | |
| | | | Additional Weight Additives | |
| | | | Advanced Charges | |
| | | | Shuttle Service | |
| | | | Self-Storage/Mini-Warehouse Pickups or Deliveries | |
| | | | Overtime Pickups or Deliveries | |
| | | | Other Additional Services | |

TOTAL ESTIMATED COST $ 7249.11

If the total tariff charges for the listed articles and services exceed this estimate by more than ten percent, then, upon your request, the carrier must relinquish possession of your shipment upon delivery in advance of the payment of the total amount of tariff charges shown on the bill of lading, or freight bill. You are still obligated to pay the balance of the total charges within 15 days.

Maximum amount to be paid on delivery of your C.O.D. shipment in cash, certified check or money order is (total estimated cost plus 10 percent):

$ 7249.11

### FULL AND CUSTOM CONTAINER SERVICE

| FULL SERVICE | CONTAINERS & PACKING | $ | UNPACKING | $ |
|---|---|---|---|---|
| CUSTOM SERVICE | CONTAINERS & PACKING | | UNPACKING | |
| CARTON DESCRIPTION | QUANTITY | | QUANTITY | |
| DISH PACKS | | | 1557 | |
| CARTONS    Less Than 3 cft. | | | | |
| CARTONS    3 cft. | | | 626  M cJdr | |
| CARTONS    4.5 | | | | |
| CARTONS    6 | | | (97 | |
| CARTONS    6.5 | | | | |
| WARDROBE, CTN. | | | | |
| CRIB MATTRESS CTN. | | | 700.00 | |
| MATTRESS CTN., TWIN/TWIN LONG | | | | |
| MATTRESS CTN., DOUBLE (NOT EXCEEDING 54" X 75") | | | | |
| MATTRESS CTN., KING/QU. (EXCEEDING 54" X 75") | | | | |
| HEAVY DUTY | | | Box Stop — ee | 136.00 |
| OTHER | | | (617-261-2837 | |
| OTHER | | | | |
| TOTAL CONTAINERS & PACKING | $ | | TOTAL UNPACKING | $ |

Remarks: _____

# ALL PRO VAN LINES
★ ★ ★ ★
"PROFESSIONALS MOVING PROFESSIONALS"

100 Lamartine Street • Worcester, MA 01608
508-890-1100 • 978-630-4800 • 1-866-2-ALL-PRO

Date: 6/30/05

*REC. DAY of MOVE 7-12-05 Guys Didn't Moving Every Thing, HAVE TO Come BACK TOMORROW TO GET THE Rest of my items*

## PICK UP INFORMATION

Shipper: Janice Camillo
Origin Address: 31 Wellington Hill St
City, State: Mattapan, MA.
Country: 
Telephone: 617-417-0678 cell
Pick Up Dates: 7/7/05

## DESTINATION INFORMATION

Consignee: 
Dest. Address: 
City, State: Smyrna, GA.
Country: 
Telephone: 617-304-8971 cell
Delivery Dates: 

Telephone Estimates .......... Yes ___ No ___
Non Binding Estimate ......... Yes ___ No ___
Binding Estimate ............. Yes ✓ No ___
Visual Estimate Performed .... Yes ✓ No ___

| | | | |
|---|---|---|---|
| Mileage | 1051 | EST. CONTAINERS | Cont.   Packing |
| Est. Weight | 18000 | Dishes Barrels | |
| Full Line Haul | 16917 | 1.5 Cubic Ft. | |
| Percentage Cut | 50% | 3.0 Cubic Ft. | |
| Charged Line Haul | 8458.50 | 4.5 Cubic Ft. | |
| Bottom Line Haul | — | 6.0 Cubic Ft. | |
| 6% Fuel | 507.51 | 6.5 Cubic Ft. | |
| Origin ATC 1.40 | 252.00 | Waredrobes | |
| Dest. ATC @ .90 | 162 | Mirror Cartons | |
| Piano Charge | | Matress: | |
| Grandfather Clock | | Single-Double | |
| Extra Pick-Up | | King-Queen | |
| # 1 Flights Origin | 405 | Crib | |
| # Flights Dest. | | Special Crates | |
| Elevator Origin | | | |
| Elevator Dest. | | | |
| Excessive Carry | | | |
| Washer Servicing | | | |
| Valuation Ins | | | |
| Containers/Packing | | | |
| TOTAL CHARGES | ~~9785.01~~ | Total Charges $7200 | |

COMMENTS: 

X _____ Salesperson

# ALL PRO VAN LINES, INC.

AGENT: AP

OWNER'S GRADE OR RATING AND NAME: Janice Camillo
ORIGIN LOADING ADDRESS: 31 Wellington Hill, Mattapan, MA
DESTINATION: Smyrna, GA

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR.

| ITEM NO. | CR. REF. | ARTICLES | CONDITION AT ORIGIN | EXCEPTIONS (IF ANY) AT DESTINATION | ITEM NO. |
|---|---|---|---|---|---|
| 1 | | Box | P.B.O.'d | | 1 |
| 10 | | Box | P.B.O.'d | | 10 |
| 20 | | Box | P.B.O.'d | | 20 |
| 30 | | Box | P.B.O.'d | | 30 |
| 40 | | Box | P.B.O.'d | | 40 |

REMARKS/EXCEPTIONS:

WARNING → BEFORE SIGNING CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN SPACE ON THE RIGHT ABOVE.

AT ORIGIN — SIGNATURE (CONTRACTOR, CARRIER OR AUTHORIZED AGENT/DRIVER) DATE 7/12/05
OWNER OR AUTHORIZED AGENT: Janice Camillo  DATE 7/13/05

# ALL PRO VAN LINES, INC.

| AGENT | AP |
|---|---|

| OWNER'S GRADE OR RATING AND NAME | Janice Camillo |
|---|---|
| ORIGIN LOADING ADDRESS | 31 Wellington Hill St.  CITY: Mattapan  STATE: MA |
| DESTINATION | Smyrna GA |

| ITEM NO. | CR. REF. | ARTICLES | CONDITION AT ORIGIN | EXCEPTIONS (IF ANY) AT DESTINATION | ITEM NO. |
|---|---|---|---|---|---|
| 1 | | Box | P.B.O. | | 1 |
| 2 | | | | | 2 |
| 3 | | | | | 3 |
| 4 | | | | | 4 |
| 5 | | | | | 5 |
| 6 | | | | | 6 |
| 7 | | | | | 7 |
| 8 | | | | | 8 |
| 9 | | | | | 9 |
| 50 | | Box | P.B.O. | | 0 |
| 1 | | | | | 1 |
| 2 | | | | | 2 |
| 3 | | | | | 3 |
| 4 | | | | | 4 |
| 5 | | | | | 5 |
| 6 | | | | | 6 |
| 7 | | | | | 7 |
| 8 | | | | | 8 |
| 9 | | | | | 9 |
| 60 | | Box | P.B.O. | | 0 |
| 1 | | | | | 1 |
| 2 | | | | | 2 |
| 3 | | | | | 3 |
| 4 | | | | | 4 |
| 5 | | | | | 5 |
| 6 | | | | | 6 |
| 7 | | | | | 7 |
| 8 | | | | | 8 |
| 9 | | | | | 9 |
| 70 | | Box | P.B.O. | | 0 |
| 1 | | | | | 1 |
| 2 | | | | | 2 |
| 3 | | | | | 3 |
| 4 | | | | | 4 |
| 5 | | | | | 5 |
| 6 | | | | | 6 |
| 7 | | | | | 7 |
| 8 | | | | | 8 |
| 9 | | | | | 9 |
| 80 | | Box | P.B.O. | | 0 |

Signatures:
- At Origin (Contractor/Carrier): [signature] 7/12/05
- At Origin (Owner): Janice Camillo 7/13/05

FORM # 1190 REV 2/00

## ALL PRO VAN LINES, INC.

| Field | Value |
|---|---|
| AGENT | AP |
| OWNER'S GRADE OR RATING AND NAME | Janice Camillo |
| ORIGIN LOADING ADDRESS | 31 Wellington Hill St |
| CITY | Mattapan |
| STATE | MA |
| DESTINATION | Smyrna GA |

NOTE: THE OMISSION OF THESE SYMBOLS INDICATES GOOD CONDITION EXCEPT FOR NORMAL WEAR.

| ITEM NO. | CR. REF. | ARTICLES | CONDITION AT ORIGIN | EXCEPTIONS (IF ANY) AT DESTINATION |
|---|---|---|---|---|
| 081 | | Box | P.B.O-cu | |
| 90 | | Box | P.B.O-cu | |
| 94 | | Marble Top Desk | P-B-O-U 10.12 585.SC.C4.C 416.SC.C | Broken all 4 leg |
| 95 | | Mirror Dresser | 10.12 585 SC SC 6 | |
| 96 | | Marble top china cab. | 10.12.cu 585 sc.6 4/6 Broken 19.8 | |
| 97 | | Head Board | SC | |
| 98 | | Foot Board | SC | |
| 99 | | Wicker stand | 2 L SC 6 | |
| 100 | | Wicker Stand | 2 L SC 6 | |
| 1 | | Seed Stool | SC 10 | |
| 2 | | Bed Rails | SC | |
| 3 | | Metal safe base | SC L | |
| 4 | | Metal lock | SC K | |
| 5 | | Sm metal Rack | SC K | |
| 6 | | Night Stand | | |
| 7 | | Foot Board | | |
| 8 | | Head Board | | |
| 9 | | Night Stand T.V. stand | | |
| 10 | | Night Stand | | |
| 1 | | Jew Box | | |
| 2 | | (PL) Tote | P.B.O.CU | |
| 6 | | (PL) Tote | P.B.O.CU | |
| 7 | | Mattress | Shrink | |
| 8 | | Box Spring | Shrink | |
| 9 | | Box | P.B.O.CU | |
| 0 | | Box | P.B.O.CU | |

WARNING → "WE HAVE CHECKED ALL THE ITEMS LISTED AND NUMBERED 1 TO _____ INCLUSIVE AND ACKNOWLEDGE THAT THIS IS A TRUE AND COMPLETE LIST OF THE GOODS TENDERED AND OF THE STATE OF THE GOODS RECEIVED"

BEFORE SIGNING CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN SPACE ON THE RIGHT ABOVE.

AT ORIGIN — (SIGNATURE) [signed] 7/13/05
OWNER OR AUTHORIZED AGENT (SIGNATURE) Janice Camillo 7/13/05

# HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

**ALL PRO VAN LINES, INC.**   AGENT: AP

PAGE NO. 4

OWNER'S GRADE OR RATING AND NAME: Janice Camillo
ORIGIN LOADING ADDRESS: 31 Wellington Hill St, Paterson, MA
DESTINATION: Smyrna, GA

| ITEM NO. | CR REF. | ARTICLES | CONDITION AT ORIGIN | EXCEPTIONS (IF ANY) AT DESTINATION | ITEM NO. |
|---|---|---|---|---|---|
| 121 | | Wicker Basket | 2 | | 1 |
| 2 | | Pcs Tote | PB-0-CU | | 2 |
| 3 | | Wicker Desk | 2 SC R | | 3 |
| 4 | | Wicker Drawer | 2 SC R | | 4 |
| 5 | | Bed Rails | SC R | | 5 |
| 6 | | Twin Mattress | S+SO | | 6 |
| 7 | | Twin Mattress | S+SO | | 7 |
| 8 | | Twin Box Spring | S+SO | | 8 |
| 9 | | Twin Box Spring | S+SO | | 9 |
| 130 | | Pc Trash Can | BF-2 | | 0 |
| 1 | | Wicker Wall Step | 2 SC R | | 1 |
| 2 | | Pc Tote | PB-0-CU | | 2 |
| 3 | | Box | " | | 3 |
| 4 | | Tall Wicker Drwr. | 2 SC R BK | | 4 |
| 5 | | Box | PB-0-CU | | 5 |
| 6 | | Fold up metal shlf. | SC R | | 6 |
| 7 | | Pc Tote | PB-0-W | | 7 |
| 8 | | Sm China Cab. | 10.12. 4. 589. " | | 8 |
| 9 | | Lrg China Cab. | 10.12.4.589. SC R. BK 2 | | 9 |
| 140 | | Book Shelf Sml | SC R KU BR MCU. | | 0 |
| 1 | | Music Bookshelf | 10. SC G. 589. | | 1 |
| 2 | | Sofa Table | 10.12.SC R & SC R | | 2 |
| 3 | | Wicker Love Seat | 2 SC R 15 S+SO | | 3 |
| 4 | | Single Wicker Chair | " " | | 4 |
| 5 | | Single Wicker Chair | " " | | 5 |
| 6 | | Coffee Table | 10.12. 6 | | 6 |
| 7 | | TV Stand | SC R M/O | | 7 |
| 8 | | Book Shelf | 589. 12. 10. 18. SC R BK | | 8 |
| 9 | | Book Shelf | 589. 12. 10. 18. SC R BK 40 | | 9 |
| 150 | | Box | PB-0-CU | | 0 |
| 1 | | 27" JVC TV | M. CU. | | 1 |
| 2 | | Sofa Table | 10.12.6. SC R G TO | | 2 |
| 3 | | Mattress | S+SO | | 3 |
| 4 | | Mattress | S+SO | | 4 |
| 5 | | Box Spring | S+SO | | 5 |
| 6 | | Box Spring | S+SO | | 6 |
| 7 | | Bottom Part Drwr | 10.16.12.589 | | 7 |
| 8 | | Top Part Drwr | 10. 589. 12. 589. | | 8 |
| 9 | | OS Chair | S+SO M/O | | 9 |
| 160 | | Pcs Tote | PB-0-CU | | 0 |

WARNING: BEFORE SIGNING CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN SPACE ON THE RIGHT ABOVE

AT ORIGIN — Signature (Carrier) 7/12/05 ; Owner: Janice Camillo 7/13/05

**ALL PRO VAN LINES, INC.**

HOUSEHOLD GOODS DESCRIPTIVE INVENTORY

PAGE NO. 5    NO. OF PAGES

AGENT: AP

OWNER'S GRADE OR RATING AND NAME: Janice Camillo

ORIGIN LOADING ADDRESS: 31 Wellington Hill St, Mattapan, MA

DESTINATION: Smyrna, GA

| ITEM NO. | CR. REF. | ARTICLES | CONDITION AT ORIGIN | | EXCEPTIONS (IF ANY) AT DESTINATION | ITEM NO. |
|---|---|---|---|---|---|---|
| 1 | | Night stand | 16. 12. 12. G87 | | | 1 |
| 2 | | Box | P.B.O.C. | | | 2 |
| 3 | | Wicker Basket | 2 SCR | | | 3 |
| 4 | | China cab. | SC R A/W 16.583 1210 | | | 4 |
| 5 | | Box | P.B.O.CU | | | 5 |
| 6 | | Box | P.B.O.CU | | | 6 |
| 7 | | | | | | 7 |
| 8 | | | | | | 8 |
| 9 | | | | | | 9 |
| 0 | | | | | | 0 |
| 1 | | | | | | 1 |
| 2 | | | | | | 2 |
| 3 | | | | | | 3 |
| 4 | | | | | | 4 |
| 5 | | | | | | 5 |
| 6 | | | | | | 6 |
| 7 | | | | | | 7 |
| 8 | | | | | | 8 |
| 9 | | | | | | 9 |
| 0 | | Box | P.B.O.CU | | | 0 |
| 1 | | China Cab. Part | SC R 559. 101.76 | | | 1 |
| 2 | | | | | | 2 |
| 3 | | Box | P.B.O.CU | | | 3 |
| 4 | | China cab. | 4.16.12.10. | | | 4 |
| 5 | | Bakers Rack | SC R | Back Glass Broken | | 5 |
| 6 | | RCJ tote | P.B.O.C. | | | 6 |
| 7 | | RCJ tote | '' | | | 7 |
| 8 | | Corner Table | SC R 101.17 | | | 8 |
| 9 | | '' | '' | | | 9 |
| 0 | | Frame Rack | SC R A/O | | | 0 |
| 1 | | Table corner | 10.12.4.6. | | | 1 |
| 2 | | '' | '' | | | 2 |
| 3 | | Table | 10.12.4.58. 84 | | | 3 |
| 4 | | Wicker Basket | 2 | | | 4 |
| 5 | | Box | P.B.O.CU | | | 5 |
| 6 | | RCJ tote | | | | 6 |
| 7 | | | | | | 7 |
| 8 | | | | | | 8 |
| 9 | | | | | | 9 |
| 0 | | RCJ tote | P.B.O.CU | | | 0 |

WARNING → BEFORE SIGNING CHECK SHIPMENT, COUNT ITEMS AND DESCRIBE LOSS OR DAMAGE IN SPACE ON THE RIGHT ABOVE.

AT ORIGIN: (Signature) [signed]  DATE 7/12/05
Owner: (Signature) Janice Camillo  DATE 7/13/05

# JOHN H. MOLLOY
## ATTORNEY AT LAW

385 Broadway, Suite 402
Revere, Massachusetts 02151
Telephone: 781-284-9934
Facsimile:  781-284-5301

Robert B. Burns, Esquire
Sean F. Donahue, Esquire
Sergio P. Vespa, Esquire (of counsel)

3353 Washington Street
Jamaica Plain, Massachusetts 02130
Telephone: 617-522-9701
Facsimile: 617-522-9703

*Please direct all correspondence to the Medford Office

October 3, 2005

379 Salem Street
Medford, Massachusetts 02155
Telephone: 781-395-3569
Facsimile: 781-395-4165

- CERTIFIED MAIL RETURN RECEIPT REQUESTED -

Wesley S. Chused, Esquire,
Looney & Grossman, LLP
101 Arch Street
Boston, Massachusetts 02110-1112

RE: <u>DEMAND FOR RELIEF PURSUANT TO MGL C. 93A, §§ 9 & 11</u>

Dear Atty. Chused:

    This is a formal demand for relief pursuant to Massachusetts General Laws c. 93A, §§ 9 & 11, the Consumer Protection Act, against All Pro Van Lines, Inc., and/or All Pro Moving & Storage, Inc. (hereinafter referred to as, "All Pro"). Claim is hereby made by Janice Camillo (hereinafter referred to as "Ms. Camillo") against your clients, All Pro Van Lines, Inc., and/or All Pro Moving & Storage, Inc., for unfair and deceptive business practices involving interstate transportation of household goods.

    On or about June 30, 2005, a member of Ms. Camillo's family telephoned All Pro after finding its' advertisement in a telephone book, and requested an estimate for the cost to move from Boston to Georgia. The advertisement read, in part, that All Pro has "Professionals moving professionals . . . courteous and quality trained personnel . . . [and] always guaranteed prices."

    On July 5, 2005, All Pro's agent or employee (hereinafter "agent") visited Ms. Camillo's home, in Boston, to give Ms. Camillo an estimate of her move. Ms. Camillo gave the agent a tour of her home and identified the property and other belongings that needed to be moved. Based on the agent's written estimate and oral representations, Ms. Camillo ultimately chose All Pro to move her household belongings because she believed All Pro to be an honest and ethical company and, as advertised, extremely competent. The estimate, which was a non-binding estimate, was in the sum of $7,249.11. "Non-binding estimates" are based upon the estimated weight or volume of the shipment and the accessessorial services requested, if any. "Non-binding estimates" are not binding upon interstate carriers, like All Pro. Carriers base the final charges upon the actual weight of the household goods and the tariff provisions in effect.

    At all material times relevant hereto, and despite federal requirements to the contrary, All Pro did not provide Ms. Camillo with:

        a. A copy of the booklet entitled, "Your Rights and Responsibilities When You Move," a document the Interstate Commerce Commission requires to be given to all shipping customers;

    b. A written description of All Pro's procedure for responding to complaints and inquiries;

    c. An accurate estimate of charges;

    d. A summary of All Pro's arbitration program;

    e. A copy of the insurance policy or other appropriate evidence of the insurance that Ms. Camillo purchased, if any, from All Pro; and,

    f. The form of payment that All Pro would honor at delivery.

Three days later, on July 8th, other agents of All Pro visited Ms. Camillo's home, in Boston, to commence transportation of her household goods. After walking through Ms. Camillo's home, one of those agents told Ms. Camillo that the estimate she previously received from All Pro was too low. A dispute arose between All Pro and Ms. Camillo regarding the cost of transporting her household goods. All Pro's agents abruptly left the premises.

On July 9th, after conversations with the Massachusetts Attorney General's Office, an agent of All Pro contacted Ms. Camillo and agreed to perform the move for a flat fee of $7,200.00. Ms. Camillo agreed to that price. Yet, at that time, no written agreements had been executed between the parties.

On July 12th, All Pro returned to Ms. Camillo's home, in Boston, to commence transportation of her household goods. Before executing any written agreements or documents and before taking possession of any household goods from Ms. Camillo's home, All Pro presented a handwritten binding estimate to Ms. Camillo in the sum of $9,785.01, and dated June 30, 2005. Unlike a "non-binding estimate, a "binding estimate" is an agreement made in advance between the interstate carrier and household consumer. A "binding estimate" guarantees the total cost of the move based upon the quantities and services shown on the estimate.

Like before, a dispute immediately arose between All Pro and Ms. Camillo regarding the cost of transporting her household goods. However, shortly thereafter, All Pro eventually agreed to perform the job for a flat fee of $7,200.00. That figure was written onto a document by one of All Pro's agents in Ms. Camillo's presence. The document evidences the existence of a binding estimate in the amount of $7,200.00.

Before executing a shipping contract with All Pro, Ms. Camillo was repeatedly assured by All Pro's agent that the job would be performed for a flat fee of $7,200.00. The agent then presented a written contract to Ms. Camillo. Upon signing the contract, Ms. Camillo was told by the agent that, in the circumstances, the company's maximum limit of liability is ten thousand dollars. Ms. Camillo signed the contract. The contract evidences that the agreement between the parties was based upon a binding, as opposed to a non-binding, estimate. The contract is silent on the cost of services. This omission will have significance in the discussion below. After Ms. Camillo signed the contract, All Pro began packing its' truck. All Pro agents/employees were becoming deliberately belligerent and intimidating in their manner towards Ms. Camillo.

On July 13th, All Pro returned to Ms. Camillo's home to finish packing. Ms. Camillo was not present. All Pro's agent pressured Ms. Camillo's daughter to sign another contract claiming that the contract that Ms. Camillo had signed that previous day was lost. The agent also told Ms.

Camillo's daughter that the contract and its' terms were exactly the same as the one that Ms. Camillo had signed that previous date. The agent told Ms. Camillo's daughter that unless she signed the contract then the job could not be completed that day. Already under mounting pressure from their landlord to vacate the premises, Ms. Camillo's daughter signed the contract which, coincidently, did not indicate whether the contract was a binding or non-binding estimate. And, unlike the contract that Ms. Camillo had signed that previous day, the contract included charges totaling $11,122.74.

On or about July 20th, Ms. Camillo arrived in Georgia in anticipation of the delivery of her household goods. Several dates were scheduled for delivery and then cancelled. On or about July 25th, Ms. Camillo met All Pro's agent at a weigh station in Georgia. At that time, Ms. Camillo was informed that the household goods on one of the two loaded trucks had been placed in storage because the truck had to be returned to Boston. Ms. Camillo was also informed that All Pro intended to unload the remaining truck and obtain her property from storage using the same truck and, subsequently, deliver the property to her new home.

When the truck physically arrived at Ms. Camillo's property in Georgia, All Pro's agent demanded payment of $9,700.00, in advance, before unloading the truck. That demand was also reiterated by another agent of All Pro who also spoke to Ms. Camillo that day. Ms. Camillo was told that upon full-payment of $9,700.00, All Pro would unload her property and later retrieve the remaining property from storage, weigh it, and make delivery. Ms. Camillo asked to inspect the property outside her home, yet her request was denied. Ms. Camillo refused to make payment, as demanded by All Pro in the sum of $9,700.00.

Until recently, All Pro adamantly refused to relinquish Ms. Camillo's housegoods or make delivery unless it received $7,974.02. All Pro claimed that Ms. Camillo also remains liable for the difference between what she pays and the actual tariff charges due the carrier. All Pro also claimed that there will be additional charges of $2,858.72 (the difference between $7,974.02 and the actual charges due on the shipment), plus storage and redelivery charges in accordance with All Pro's tariff. However, on September 26th, All Pro agreed to deliver Ms. Camillo's household goods upon payment of $7,200.00, yet maintains that it is still entitled to additional charges including, but not limited to, actual tariff, storage, and redelivery charges.

All Pro's conversion of Ms. Camillo's household goods has been a constant source of emotional pain, causing her severe emotional distress. She feels that her move was a complete disaster. Additionally, Ms. Camillo has had to purchase new household goods in the sum of $14,782.19 while living in her new home, in Georgia. Otherwise, she would be residing in an empty home. The said purchases were made by Ms. Camillo prior to September 26th. The value of her household goods and personal effects presently being held by All Pro is approximately $90,000.00. Ms. Camillo has been without that property for the past two months and, despite repeated requests, has not received any assurances that the property still exists or is in good condition.

## VIOLATIONS OF LAW

Ms. Camillo relied upon All Pro's confirmed representations regarding payment of a $7,200 flat fee to move her household goods from Boston to Georgia, and expected that All Pro would move her household goods for that price. Based on Ms. Camillo's factual account of the history of this case, it is absolutely impossible that Ms. Camillo could have received her household goods until payment of $7,974.02. Further, there is more than enough evidence to form a reasonable

suspicion that All Pro's agents, at best, acted negligently or, at worst, wrongfully converted Ms. Camillo's household goods to their own use.

All Pro has engaged in unfair and deceptive acts and practices in violation of Massachusetts General Laws Chapter 93A, including, but not limited to:

1. making misrepresentations of material facts in the advertisement of its' services to induce consumers, like Ms. Camillo, to do business with it;
2. making misrepresentations of material facts to induce Ms. Camillo to enter the shipping contract with All Pro;
3. making misrepresentation of material facts regarding insurance coverage;
4. making material misrepresentations of material fact; and,
5. failing to provide the services offered.

### DEMAND FOR RELIEF

Accordingly, in behalf of Ms. Camillo, we hereby demand payment of $104,782 in settlement of all obligations and damages to her. Under Massachusetts General Laws Chapter 93A, you have an opportunity to make a reasonable tender of settlement within thirty (30) days of your receipt of this letter. If no such tender is rendered, Ms. Camillo may recover up to three (3) times her actual damages, plus reasonable attorney's fees and costs.

I am available to discuss this matter with you or your attorney without waiving the thirty-day requirement pursuant to Massachusetts General Laws, Chapter 93A. All further communication should be made through this office.

Very truly yours,

Sean F. Donahue



# Looney & Grossman LLP
## Attorneys at Law

Wesley S. Chused
Voicemail: Ext 551
Email: wchused@lgllp.com

101 Arch Street
Boston, Massachusetts 02110-1112
Telephone (617) 951-2800
Telecopier (617) 951-2819
www.lgllp.com

October 6, 2005

Sean F. Donahue, Esq.
Law Offices of John H. Molloy
379 Salem Street
Medford, MA 02155

Re: **Janice Camillo v. All Pro Moving & Storage, Inc.
Our File No. 12771.014**

Dear Mr. Donahue:

On behalf of my client, All Pro Van Lines, Inc. ("All Pro"), this is All Pro's response to your letter of October 3, 2005 wherein you demand certain relief on behalf of your client, Janice Camillo, pursuant to Mass. Gen. Laws c. 93A. Without admitting that your October 3, 2005 letter properly sets forth or properly qualifies as a demand for relief under Chapter 93A, All Pro denies Ms. Camillo's demands for the following reasons:

1. **Facts in Dispute.** All Pro disputes virtually all allegations of fact set forth in your October 3, 2005 demand letter. All Pro denies it committed any unfair or deceptive practices with respect to Ms. Camillo and her shipment of household goods from Mattapan, Massachusetts to Atlanta Georgia last July. The facts upon which All Pro's bases this denial are set forth in more detail in my letters dated August 16, 2005 and September 7, 2005 to you and Mr. Molloy, and in the affidavits of Elijah Bowles of All Pro and me that I filed in opposition to Ms. Camillo's motions for injunctive relief in the case of *Janice Camillo v. All Pro Moving & Storage, Inc.,* pending in the United States District Court for the District of Massachusetts, Civil Action No. 05-11721-MLW (the "Civil Action"). All those pleadings are incorporated herein by reference. In short, All Pro denies any unfair or deceptive conduct that might be actionable under Chapter 93A, even if that statute applied in this case, which All Pro denies.

2. **Federal Preemption.** Ms. Camillo's Chapter 93A demand for relief is also denied because that statute is preempted as a matter of law by the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706, and the cases thereunder. She is not entitled to relief under Chapter 93A as a matter of law. This was also explained in my letters of August 16 and September 7, 2005 to you and Mr. Molloy, and in All Pro's Opposition to Plaintiff's Motions for Preliminary Injunctive Relief, also filed in the Civil Action, previously served upon you and incorporated herein by reference. You continue to completely ignore this issue. Ms.

L:\12771\014\Ltr\006 (Donahue).doc

Looney & Grossman LLP
Sean F. Donahue, Esq.
Page 2
October 6, 2005

Camillo's household goods shipment is in interstate commerce. Massachusetts state statutes do not apply. I fail to comprehend (as did Judge Wolf) your rationale as to why or how Carmack Amendment preemption of Ms. Camillo's Chapter 93A claim would not apply. It is especially disturbing that, in spite of the fact that I wrote to you twice, talked with you at least twice in detail and pointed out the basis for the legal preemption of Ms. Camillo's Chapter 93A claim, and in spite of the fact that Carmack Amendment preemption was argued at length before Judge Wolf on September 26, 2005 and he expressly found your client's Chapter 93A claim to be preempted, you have chosen nonetheless to serve the present Chapter 93A demand. In these circumstances, I find your October 3, 2005 Chapter 93A demand letter disingenuous at best, if not bordering on a possible violation of Rule 11. For at least the fourth or fifth time, Ms. Camillo's Chapter 93A claim, as well as any "conversion" or "emotional distress" claims, are denied because the Carmack Amendment preempts all such claims as a matter of law. They are legally defective.

3. **No Consideration Paid.** Thus far, Ms. Camillo has paid All Pro nothing for its interstate transportation and storage services. Even if the $7,200.00 figure that Ms. Camillo asserts as a "binding estimate" were deemed to be so, she has, nonetheless, failed and refused to pay even that amount, take delivery of her shipment and stop the storage charges from accruing, as All Pro has offered to do, with any balance to be determined by the Court. All Pro, as you know, contends that its estimate was non-binding and that additional goods were added to the shipment *after* its original non-binding estimate, and that it is entitled to, and believes it will obtain a judgment against Ms. Camillo for, all tariff charges (transportation, storage and redelivery) due All Pro under the filed rate doctrine. This has all been described in detail in All Pro's Counterclaim in the Civil Action, which is also incorporated herein by reference. My client and I find it inconceivable that a shipper such as Ms. Camillo would refuse to make this ($7,200) payment to get her shipment delivered and stop the storage charges from accruing.

4. **Failure to Mitigate Damages.** Ms. Camillo could have mitigated any alleged damages in early as August 16, 2005, by paying All Pro under the 110% rule as described in my letter of that date. Even if the $7,200.00 figure were deemed to be "binding," she still would have mitigated her damages by the difference of only $774.20 ($7,974.02 minus $7,200.00). Ms. Camillo, however, has paid All Pro nothing and has not made the slightest attempt to mitigate any of her alleged damages.

5. **Carrier's Lien.** All Pro, under the bill of lading and under federal common law, has a carrier's lien on Ms. Camillo's shipment to satisfy payment of the transportation charges due. Chapter 93A does not trump that right for all the reasons I have previously explained.

Looney & Grossman LLP
Sean F. Donahue, Esq.
Page 3
October 6, 2005

6. **Ms. Camillo's Remedies.** If any of Ms. Camillo's complaints were true, then she has rights granted to her by the ICC Termination Act of 1995, 49 U.S.C. §13101 *et seq.*, and the rules and regulations of the Federal Motor Carrier Safety Administration, 49 C.F.R. §370, *et seq.* Pursuant to that statute and those regulations, she may file whatever complaints, freight loss or damage claims or overcharge claims she chooses. However, simply because she seeks a different remedy (such as Chapter 93A relief), does not entitle her to disregard the remedy prescribed by federal law and regulations.

For the foregoing reasons, Ms. Camillo's claim for relief under Mass. Gen. Laws c. 93A is denied.

Very truly yours,

Wesley S. Chused

WSC/dml
cc:   All Pro Van Lines, Inc.

L:\12771\014\Ltr\006 (Donahue).doc