UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
2005 DEC -9 P 3:46
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Janice Camillo, | ) |
| *Plaintiff* | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) NO.: 05-11721-MLW |
| All Pro Moving & Storage, Inc., | ) |
| | ) |
| *Defendant* | ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff Janice Camillo ("Camillo") seeks to amend her Complaint to include nine common law and statutory claims against Defendant All Pro Moving & Storage, Inc. ("All Pro"), some of which arise out of All Pro's actions *preceding* its interstate transportation of Plaintiff Camillo's household goods from Boston, Massachusetts to Atlanta, Georgia, and others which arise directly out of All Pro's interstate transportation of those goods.

Those claims arising out of All Pro's actions *preceding* its interstate transportation of Plaintiff Camillo's household goods include Conversion (Count Two), Misrepresentation (Count Four), Violations of M.G.L. c. 93A (Count Eight), Emotional Distress (Count Nine), and, in part, Negligence (Count Six). And, those claims arising out of All Pro's interstate transportation of Plaintiff's goods include Breach of Contract (Count One), Breach of Good Faith & Fair Dealing (Count Three), Deceit and Tortious

Interference of Contract Rights (Count Five), Unjust Enrichment (Count Seven), and, in part, Negligence (Count Six).

Since a responsive pleading has been served, Fed. R. Civ. P. 15 (a) requires Plaintiff Camillo to seek leave of court to amend Her Complaint as All Pro has declined to formally consent to the proposed amendments. The Rule further provides, leave of court "shall be freely given when justice so requires . . . "

## PROCEDURAL HISTORY

On or about August 12, 2005, Plaintiff brought this Civil Action by filing a Verified Complaint for Preliminary Injunction, along with other related motions, in the Suffolk Superior Court, in Boston, Massachusetts. The Complaint did not contain any Counts, as the primary purpose of the Complaint, at that time, was to seek injunctive relief. Defendant All Pro filed a Notice of Removal on or about August 18, 2005, and the matter was removed from the Suffolk Superior Court to the United States District Court for the District of Massachusetts. Following removal, copies of all pleadings on file in said Suffolk Superior Court were filed in this Honorable Court. After hearing, on September 26, 2005, this Court *denied* Plaintiff's request for preliminary injunction. Also on that date, the Court *denied* Plaintiff's Emergency Motion For Order Compelling Defendant to Deliver Furnishings and Allow Inspection, and further *denied* Plaintiff's Emergency Motion For Order Compelling Defendant to Deliver Furnishings to Atlanta or, Alternatively, to Permit Plaintiff To Arrange Alternative Transport.

Plaintiff's Motion To Amend Complaint was filed on or about October 10, 2005. Defendant's Opposition To Plaintiff's Motion To Amend Complaint was filed on or about October 25, 2005.

2

In Defendant's Opposition To Plaintiff's Motions To Amend Complaint, Defendant All Pro maintains that the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706, preempts all the claims alleged in Plaintiff's proposed Amended Complaint.

Plaintiff Camillo claims that the Carmack Amendment only preempts those claims to loss or damage to goods that are based upon activity specifically undertaken in the course of transporting goods in interstate commerce.

## FACTUAL STATEMENT

Having seen Defendant All Pro's advertisement in a telephone book and relying on representations made therein, Plaintiff Camillo contacted the company to move her household goods from Boston, Massachusetts, to Atlanta, Georgia. Following failed negotiations between the parties regarding the cost for services, Defendant All Pro contacted Plaintiff Camillo and made representations to perform the job at a flat rate price, otherwise known as a "binding estimate," to induce her to engage in a business relationship with it. All Pro eventually took possession of Camillo's belongings, and now demands payment of more money than what it had quoted to Camillo.

## LEGAL ARGUMENT

Since ICC enforcement activities ended in 1995, moving companies have engaged in abusive behavior and outright fraud knowing that it's too expensive for most individuals to fight them in court. "Hostage freight" situations have skyrocketed, as have instances of moving companies tacking on unauthorized, unsigned-for charges knowing that most people will pay rather than fight them in court or risk collection actions that could ruin their credit ratings. *See*, Senate Report, 108th Congress, 1st Session, Calendar

No. 421, 108-215 –Surface Transportation Safety Reauthorization Act of 2003. "[C]omplaints against household goods carriers have multiplied in recent years, really leaving a vacuum, in a sense, for inviting unscrupulous operators to prey on consumers." U.S. Congressman Thomas E. Petri, (R-WI), Vice-Chairman, Committee on Transportation and Infrastructure, speaking before the Subcommittee on Highways and Transportation on Oversight of the Household Goods Moving Industry (107-32), U.S. House of Representatives, July 12, 2001.

Congress designed preemption provisions to eliminate diverse state regulations (such as regulation of pricing, routes, and services), and promote uniform standards for interstate transportation of household goods. However, the scope of those standards, which foster interstate commerce, while important, ought not be so expansive as to reach beyond transportation in its' traditional sense, and thereby foreclose the possibility for protection of consumers against fraud, misrepresentation, and extortion.

> "In determining the scope of Carmack preemption, we look to the intent of Congress and the purpose of the Amendment. Our inquiry into the intent of Congress is made more difficult because the Carmack Amendment was adopted without discussion or debate. 40 Cong. Rec. 7075 (1906). It is accepted, however, that the principal purpose of the Amendment was to achieve national uniformity in the liability assigned to carriers. "[I]t is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject." Adams Express Co. v. Croninger, 226 U.S. 491, 506 (1912). The importance of uniformity has frequently been stressed in subsequent Supreme Court opinions. See, e.g., New York, N.H. & Hartford R.R. Co. v. Nothnagle, 346 U.S. 128, 131 (1953); Atchison, Topeka & Santa Fe Ry. v. Harold, 241 U.S. 371, 378 (1916)."

Jane Rini v. United Van Lines, Inc. 903 F. Supp. 234, 236 (1995).

In the instant case, Plaintiff Camillo alleges, in part, that Defendant All Pro deliberately or negligently made fraudulent representations to Plaintiff Camillo in a

4

calculated effort to induce her to conduct business with it. Defendant All Pro did not deal fairly and in good faith with Plaintiff Camillo. All Pro knew, or certainly had reason to know, that Camillo was an unsophisticated shipper. All Pro fraudulently induced Camillo to engage in a contractual relationship with it by making representations it knew were not true. Plaintiff seeks to sue for fraud committed *prior* to the formation of the contract in All Pro's deceptive advertising ( ei., "Professionals Moving Professionals . . . Courteous and Quality Trained Personnel . . . Always Written Guaranteed Prices For East Coast Moves") (Ex. #1, *Verified Complaint For Preliminary Injunction*) and by oral representations made by All Pro to Camillo designed specifically to bait Camillo into engaging further with All Pro after a dispute arose concerning the costs of All Pro's services, which, as an aside, involved intervention by the Massachusetts Attorney General's Office. (*Amended Complaint and Demand For Jury Trial*, paragraphs 8 & 9). Camillo's proposed common law and statutory claims are premised, in part, on All Pro's conduct well before contract formation between the parties. Plaintiff alleges that the Defendant wrongfully induced her to enter into contract negotiations by making crucial representations that it knew were unlikely to be fulfilled. The issues, here, do not specifically focus on improper shipping but, instead, on All Pro's pre-contract conduct. Camillo contends that, when enacting the Carmack Amendment, Congress did not intend to protect rogue moving companies who deliberately and methodically prey on unsuspecting consumers and thereby successfully entice those consumers into doing business knowing that their enticement is fictional. Like here, such enticements usually occur before the parties enter into a contractual relationship. One commonly-used enticement in the moving industry is "low balling" the consumer. The sole purpose of

the enticement is to engage the consumer in interstate transportation and, once engaged, and the moving company possess the consumer's belongings, it then demands a higher payment than originally quoted. Once the consumer's property lands in the possession of the moving company, the moving company relies on federal law to shield itself from liability for loss or damage claims to that consumer's property.

Plaintiff Camillo submits that, in the circumstances, a balancing of interests ought to exist between the protection of consumers purposefully deceived by moving companies, or by the gross negligence of such companies, who successfully obtain possession of those consumers' household goods and then hold those goods hostage for payment of a ransom and the interests of federal government to maintain certainty and uniformity that are the primary goals of the Carmack Amendment's national system of carrier liability.

Here, the liability in question is not part of the loss or damage of goods, but arises out of separate harms resulting from All Pro's deliberate, fraudulent, or negligent acts.

Camillo claims that the Carmack Amendment is inapplicable to the case at bar because Defendant All Pro's fraudulent or negligent representations, by way of advertisements and verbal representations, to her occurred before the formation of the contract and not while Camillo's belongings were being transported. "The term 'transportation' includes--(A) a motor vehicle, vehicle, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of kind related to the movement of . . . property, . . . regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, . . . storage, handling, packing, unpacking, and interchange of . . . property." 49

U.S.C. 13102(19). Camillo acted in reliance to All Pro's representations to perform its' services as trained professionals, at a guaranteed price, and for a sum of $7, 200. All Pro knew, or should have known, that Camillo would rely on those representations, which induced her to act.

In Defendant's Opposition To Plaintiff's Motion To Amend Complaint, Defendant All Pro states that Plaintiff Camillo's proposed Amended Complaint would be futile because the Carmack Amendment to the ICC Termination Act of 1995, 49 U.S.C. § 14706, preempts all claims alleged therein. However, "[A]mendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, entitle a plaintiff to relief against a defendant on some cognizable theory." Hatch v. Dep't for Children, 274 F.3d 12 (1st Cir. 2001). Plaintiff Camillo submits that, here, the proposed Amended Complaint does set forth a general scenario based on fraud, deception, and misrepresentation which, when proven, will entitle her to relief against All Pro on some, if not all, of the proposed Counts.

WHEREFORE, Plaintiff Camillo prays that this Honorable Court allow this motion to amend complaint.

FOR THE PLAINTIFF,
JANICE CAMILLO

By her attorney:

Sean F. Donahue, BBO # 558058
John H. Molloy, BBO # 600778
Law Offices of John H. Molloy
379 Salem Street
Medford, MA  02155

7